**HINES, Plaintiff v. BELLEFONTAINE (City) et, Defendants.**

Ohio Appeals, Third District, Logan County.

No. 885.    Decided October 1, 1943.

George Harris, Cleveland, for plaintiff.

Meade C. Robinson, Bellefontaine, and Samuel A. Bowman, Springfield for defendants.

CARPENTER, J. (6th District), sitting by designation in place of MIDDLETON, J. (3rd District).

## OPINION

By GUERNSEY, P. J.

This is an appeal from a judgment of the Common Pleas Court of Logan County, Ohio, enjoining the city of Bellefontaine, Ohio, from performing a contract entered into between it, through its Director of Service and Safety, with The Buckeye Incubator Company, a Delaware Corporation, of Springfield, Ohio, for the leasing, with option to purchase, of certain parking meters by it from said company.

The action was originally brought by Paul T. Hines, a taxpayer, on behalf of the city of Bellefontaine, Ohio, as plaintiff against the city of Bellefontaine, Ohio, and Z. B. Costin as Director of Service and Safety of said city, defendants, to enjoin the city from entering into the contract above referred to.

Subsequently, The Buckeye Incubator Company, a corporation organized under the laws of Delaware, with its principal place of business at Springfield, Ohio, was on its own motion, made a party defendant in said action.

Following this, plaintiff having learned that said contract had been entered into prior to the commencement of the action by him, filed an amendment and supplement to his petition, alleging such fact, and asked that the city be enjoined from performing said contract.

All the defendants then filed their joint answer to plaintiff's petition and plaintiff's amendment and supplement to his petition.

The case was submitted to this court de novo upon the pleadings mentioned and upon a transcript of the evidence submitted at the trial of the cause in the Common Pleas Court, and additional testimony submitted on the trial of the cause in this court.

From the admissions in the pleadings and from the evidence, the following facts appear:

Plaintiff is a resident and taxpayer of the city of Bellefontaine, Ohio, a municipal corporation; and brings this action as such taxpayer on behalf of said city and all its taxpayers.

On the 16th day of May, 1942, plaintiff made written demand on Meade C. Robinson, the city solicitor of Bellefontaine, that he file this action and he refused to do so.

Defendant Z. B. Costin is the Director of Public Service and Safety of said city, duly appointed, qualified and acting, and has been at all times hereinafter mentioned.

On January 29, 1942, the city council of Bellefontaine duly passed, and certified to the Mayor of said city that it had passed, Ordinance No. 1674 of said city, a copy of which is as follows:

"ORDINANCE NO. 1674

"AUTHORIZING AND DIRECTING THE DIRECTOR OF SERVICE AND SAFETY OF THE CITY OF BELLEFONTAINE, OHIO, TO ADVERTISE FOR BIDS FOR PARKING METERS.

"Be it Ordained by the Council of the City of Bellefontaine, Ohio:

"Section 1. That the Director of Service and Safety of said City be and he hereby is authorized, directed and empowered to advertise for bids for the nine months rental, with option to purchase, of 350 parking meters, more or less, all as provided by the General Code of Ohio.

"This ordinance shall take effect and be in force from and after the earliest period allowed by law.

"Passed January 29, 1942  Dalton A. Young
"Attest:      President of Council
 Harry E. Travis   Robert B. Cook, Sr.
 Clerk of Council   Mayor."

Said ordinance was duly approved by the Mayor of said city on January 29, 1942.

On March 3rd and on March 10th, 1942, said Director duly published in the Daily Examiner, a newspaper printed, published and of general circulation in said city and in Logan County, Ohio, in which said city is situated, an advertisement of the receipt of bids by said Z. B. Costin, Director of Public Service and Safety of said city, for nine months' rental, with option of purchase, of 350 parking meters, more or less, until twelve o'clock noon, March 17, 1942, which advertisement is in the words and figures following, to-wit:

"ADVERTISING FOR BIDS FOR PARKING METERS.

"Public notice is hereby given that the city of Bellefontaine, Ohio, will receive sealed bids for the nine months rental, with option to purchase, 350 parking meters, more or less, until twelve o'clock noon March 17, 1942. No specifications will be published other than the following instructions to bidders.

"Said meters shall be of the manual or automatic type and shall specify the coin or coins to be deposited therein, and the amount of parking time allowed for each amount deposited.

"Each bidder shall submit specifications of his meter, its method of operation and method of installation, and shall also

submit a sample parking meter of the same general type he proposes to furnish under his bid.

"Each bidder shall be required to deposit with the city of Bellefontaine, a cashier's certified check on an accredited bank in the amount of $500.00 to guarantee his or its entrance into a contract if given the award.

"The bids shall be quoted on a trial basis for a period of nine months with option to purchase at the end of the trial period.

"The bidders must look to the receipts from the meters for the payment of the rental and purchase and shall receive all rentals from said meters during the nine months' period, or until said meters are fully paid for, less the cost of collecting the deposits in said meters.

"Said city reserves the right to order the removal of said meters at any time during the nine months' period upon thirty days notice to the successful bidder, said removal to be at the expense of the successful bidder.

"At the conclusion of the 9 months' period, the successful bidder shall credit the rents so received by him upon the purchase price of said meters, less costs of collection and the city reserves the right to renew the contract to purchase at the end of said 9 months' period under the same terms and conditions contained in the original contract.

"The bids submitted shall include the cost of installation, and said meters shall be installed at locations designated by the city of Bellefontaine.

"The bidders shall state for what period of time, if any, they will service the meters in operation and shall further specify within what period of time said meters shall be serviced or repaired after report has been made of such need by said city.

"Each bidder shall also state what accessories, if any, they will furnish with his bid, such as coin-carrying cases, parts, etc. Each bidder shall furnish a parts list with his bid.

"No person, firm or corporation shall be disqualified or prevented from submitting a bid hereon.

"The successful bidder shall furnish a Performance Bond in the full amount of the contract.

"The city of Bellefontaine reserves the right to reject any or all bids.

> Z. B. Costin,
> Director of Public Service and Safety,
> City of Bellefontaine, Ohio,
> March 2, 1942."

On March 17, 1942, said Director opened bids and found the bid of The Buckeye Parking Meter Company, a division of The Buckeye Incubator Company of Springfield, Ohio, to be the lowest and best bid.

At that time the only parking meter legislation in effect in the city of Bellefontaine was said Ordinance No. 1674, above referred to, and no other such legislation was passed by council until April 13, 1942, when the council duly passed and certified to the Mayor it had passed Ordinance No. 1682, entitled:

"AN ORDINANCE relating to traffic and regulating the use of public streets and highways in the city of Bellefontaine, Ohio; prescribing regulations relative to the parking of vehicles upon such public streets and highways; providing for the installation, operation, maintenance, supervision, regulation and control of the use of parking meters; defining and providing for the establishment of parking meter zones upon the public streets and highways, providing for the payment thereof and for the supply of parts therefor exclusively from the receipts obtained from the operation of parking meters; providing for the enforcement hereof and providing penalties for the violation hereof; and authorizing the Director of Safety and Service to enter into a contract for parking meters with the company submitting the lowest and best bid therefor, due advertisement having been had according to law."

The various matters set forth in the title to the ordinance are the subjects of legislation in said ordinance but the legislation on such matters is limited to and comes within the general subject of the parking of vehicles in the city of Bellefontaine.

Section 5 of this ordinance is as follows:

"Section 5. The Director of Service and Safety is hereby directed and authorized to provide for the installation, regulation, control, operation and use of parking meters in good workable condition, and said Director of Service and Safety of said city of Bellefontaine is hereby vested with the power and authority and directed to enter into a contract for two hundred (200) parking meters, more or less, after due advertisement had, according to law, after approval by the Board of Control of the city of Bellefontaine, with the lowest and best bidder furnishing, installing and leasing, to the city of Bellefontaine two hundred (200) parking meters, more or less, the cost of said installation and leasing to be provided for solely from

receipts, funds and moneys obtained from the operation of said parking meters. It is further provided that the contract for the parking meters shall contain an agreement for a trial period of nine (9) months or less, from the completion of the installation; which will give the city the right to discontinue the operation of the parking meters at the end of said nine months' period, or before, at the option of the city, or to purchase or to renew the contract for said meters."

Said ordinance was duly approved by the Mayor of said city on April 21, 1942, and was presumably published as required by law.

The bid of The Buckeye Parking Meter Company, a division of The Buckeye Incubator Company, on which the award of contract was made, reads as follows:

"BUCKEYE PARKING METER PROPOSAL FOR THE CITY
OF BELLEFONTAINE, OHIO

"This proposal is made and entered into and executed in triplicate, this 16th day of March, 1942, to furnish manual type Buckeye Parking Meters for the city of Bellefontaine, Ohio, on the following terms:

"1. We will furinsh the city of Bellefontaine, Ohio, Buckeye Parking Meters with straight nickel, which gives you one hour for each nickel; or penny-nickel type meters, which gives 12 minutes for one penny and one hour for one nickel, to be used on the streets of your city in the congested business districts, estimated at three hundred fifty (350) more or less, as needed from time to time. The meters are modern and not experimental type.

"2. The meters are to be leased or rented on a basis of $2.75 each net to us per month, payable on or before the 5th day of each month and each 30 days after the installation of said meters during the term of this lease. At the end of the nine months trial period, if all of the above rentals have been paid, we will credit you with the total amount paid from rentals and sell you the meters for a balance of $26.50. You can pay this balance less 5% cash in 30 days; or we will extend this lease on the same terms and basis until the total rental receipts amount to the balance due on the meters; and at that time we will give you a bill-of-sale covering said meters. These prices include freight and installation charges.

"3. Buckeye Parking Meters come complete with standard, base, one extra coin box for each meter and five free meters to the 100, or one meter with each 20 meters contract-

ed for and installed. We will also include two carrying cases for coin boxes for the collector.

"4. SERVICE: We will give you 30 days free service with one of our trained service men, who can teach one of your employees how to service the meters. This service will be without any charge.

"5. We have read your advertisement for bids carefully and agree to all the terms; and in regard to rentals quoted in paragraph No. 2, if you prefer to give us the total receipts from the meters, we will accept this in lieu of paragraph No. 2 and give you back 50% of the gross receipts for your policing and collecting. However, it is agreed and understood that any meters that do not take in a minimum of $2.75 per month, we will have the right to reduce the amount of meters, so that the total will average $2.75 per month.

"6. The Buckeye Meter Company agrees that all rentals are to be paid solely from meter receipts and that it will not hold the city liable for the rentals from any other source.

"7. You will find attached to this proposal the following:

No. 1. Specifications of our meter and method of operation and installation.

No. 2. Certified check for $500.00 on the Lagonda National Bank, Springfield, O., payable to the city of Bellefontaine, O.

No. 3. Parts list and prices, as called for.

No. 4. We will carry sufficient parts in your city to properly service the meters, so there will be no delay at any time.

"8. WARRANTY: The Buckeye Meter Company does hereby warrant and guarantee said meters against defects in workmanship, construction and material for a period of one year from date of installation. It is understood and agreed the Buckeye Meter Company shall not be obliged to replace any part or parts of said meters which may be damaged as a result of tampering, maliciousness, accident, act of God, or any other external force or means.

"9. DELIVERY: We agree to commence the installation and delivery in 20 days from the time the contract is accepted by us and to complete same in another 10 days, as we have all the materials on hand; unless prevented by strikes, fire or acts beyond our control:

"10. If at any time during the term of this lease, or any renewals thereof, any taxes are levied upon the meters herein leased, which are the property of the Company, such as personal property taxes, sales tax, excise or license or use tax, or taxes of any nature, such taxes will be advanced by the Company and the city shall reimburse the Company in full for all

taxes or assessments or license fees so advanced only from the gross receipts of the meters before the net revenue is computed for the purpose of covering any taxes. We agree to the thirty-day removal clause set forth in the legal advertisement re-questing bids for parking meters.

"11. The city of Bellefontaine warrants that all necessary and proper steps have been taken by the duly constituted gov-ernmental and municipal authorities authorizing the execu-tion of this agreement, and that all necessary or proper or-dinances and/or resolutions have been adopted authorizing and providing for the installation of said meters and the opera-tion thereof, and agrees that it will police the said meters after installation, and shall properly enforce all ordinances and resolutions pertaining thereto.

"12. No agent of the Buckeye Meter Company shall have the power or authority to alter the printed terms of this agree-ment, except the President or Secretary.

"13. This contract shall not be binding on the Buckeye Meter Company until accepted and affirmed at its office in the city of Springfield, Ohio, by one of the officers mentioned in this paragraph and when duly accepted by both parties. No other representations or agreements, written or oral, express or implied, have been made by either party."

This proposal is signed: "Buckeye Meter Company
A Division of & owned by The Buckeye Incubator Co.
By Geo. H. Partin,
Sales Manager."

The Buckeye Meter Company is not a legal entity but is merely a designation for book-keeping purposes, of a division of The Buckeye Incubator Company, a Delaware corporation engaged in the manufacture and sale of parking meters.

No bids were advertized for or taken after the passage of Ordinance No. 1682.

Five different persons or corporations submitted bids for the furnishing of parking meters to the city in response to said advertisement, two of the bidders submitting bids for the furnishing of automatic-type meters and three for manual-type meters.

The present stage of development of parking meters is such that it is impossible to draw structural specifications upon which competitive bidding may be based, as specifications par-ticularly and exactly describing one meter would necessarily exclude others.

In cities of the size and character of Bellefontaine, in which parking meter regulations similar to those prescribed in Ordinance No. 1682 are in effect, and parking meters of the type specified in the ordinance and in the contract between the city and the Buckeye Incubator Company, the deposits in such parking meters average approximately four dollars per month per meter.

The contract, the performance of which is sought to be enjoined, is in writing and is between The Buckeye Incubator Company and the city of Bellefontaine, by Z. B. Costin its Director of Service and Safety, and is signed by The Buckeye Incubator Company by its Vice-president and Secretary, and the city of Bellefontaine, Ohio, by Z. B. Costin, Director of Service and Safety.

While it purports to be entered into under date of the 16th day of May, 1942, it was actually executed on May 18, 1942. Before its execution it was approved by the Board of Control of the city, composed of Z. B. Costin, the Service and Safety Director of the city, and Robert B. Cook, Sr., the Mayor of the city, but by reason of the absence of the clerk, such approval was not entered upon the records of said Board of Control.

This contract was partially prepared by and fully approved by the City Solicitor of Bellefontaine, before execution, although the City Solicitor did not indorse his approval thereon.

The provisions of the contract, essential to the consideration of this cause, are as follows:

The Buckeye Incubator Company agrees to furnish the city of Bellefontaine, and the city of Bellefontaine agrees to accept, under the terms and conditions hereinafter provided, 150 Buckeye Parking Meters, more or less, and The Buckeye Incubator Company agrees to install the same at locations to be selected by the city.

The meters will be installed promptly after awarding the contract, and that the purchase price of the meters should include freight and installation charges.

The Buckeye Incubator Company agrees to lease or rent said meters to the city of Bellefontaine, Ohio, for a trial period of nine months and after the city of Bellefontaine has deducted from the receipts taken in by said meters each month its entire cost in connection with making the collections and maintaining said meters the company shall receive the balance of such receipts as rent for said meters, provided however, that in no event shall the company receive more than $2.75 per month per meter as rent therefor.

The city will make the collection from the meters and after deducting the collection cost and maintenance, will remit the proceeds so collected, to the company at Springfield on or before the fifth day of each month after the installation of said meters during said nine months trial period, provided, however, that not more than $2.75 per month per meter shall be remitted to the company.

At the end of the nine month trial period the total amount received by the company shall be calculated and divided by the number of meters which the city of Bellefontaine has leased. The amount of rental per meter thus determined shall be credited upon the purchase price of said meters, to-wit $51.25 each, and the city may pay the balance, less 5% discount, for cash, within thirty days, in which event said meters shall belong fully and completely to the city, and the company will execute a bill of sale therefor.

The city shall have the option of extending this lease on the same terms until the total rental receipts received by the company shall have equalled the purchase price of $51.25 per meter for the number of meters installed, at which time The Buckeye Incubator Company will execute a bill of sale covering said meters which shall belong fully and completely to the city.

The meters shall be complete with standard, base, one extra coin box for each meter, and that the company will furnish one meter free with each twenty meters contracted for and installed, and furnish two carrying cases for coin boxes for the collector.

The company shall furnish thirty days free service for said meters and employ therefor one trained service man who shall be an employee of the company and whose duty it shall be to instruct a proper employee designated by the city to service said meters in said work; and that the company shall keep a supply of parts in the city of Bellefontaine so that all meters shall be serviced promptly during said thirty days free service period, and also will promptly make any necessary needed repairs to any of said meters after report has been made by the city that such repairs are needed.

All rentals are to be paid solely from meter receipts and the city shall not be liable for rentals from any other source.

The company shall commence the installation and delivery of said meters within twenty days from the time this contract is signed and to complete the same in another ten days, unless prevented by strikes, fire, or acts beyond the control of the company.

If at any time during the term of this lease, or any renewals thereof, any taxes are levied upon the meters herein leased, which are the property of the company, such as personal property taxes, sales tax, excise or license or use tax, or taxes of any nature, such taxes will be advanced by the company and the city shall reimburse the company in full for all taxes or assessments or license fees so advanced only from the gross receipts of the meters before the net revenue is computed for the purpose of determining the amount of rental which The Buckeye Incubator Company received and which may be credited against the purchase price.

The city shall have the right to order the removal of said meters at any time during the nine months period, upon thirty days notice to the company, said removal to be at the expense of the company.

In the event the installation of said parking meters shall be halted by an injunction granted by a court of competent jurisdiction, the city shall not be liable in damages to the company and the company shall have the full time provided for the installation of said meters after said injunction is disposed of.

The contract is attached to, and by reference made a part of and marked Exhibit A of the bond executed and delivered by The Buckeye Incubator Company as principal, and Standard Accident Insurance Company as surety, for the performance of the contract on the part of The Buckeye Incubator Company.

In the body of the bond it is recited that it is "SIGNED AND SEALED at the City of Springfield, Ohio, this 16th day of April, 1942."

In the bond, the contract is referred to as being "Dated the 14th day of March, 1942."

In the testating clause it is recited that the bond "Has been executed this 21st day of April, 1942."

The contract attached to the bond is, as hereinbefore stated, dated May 16, 1942, but was executed and delivered May 18, 1942.

In his petition and amendment and supplement to his petition plaintiff bases his right to injunctive relief against the contract, upon the following grounds, to-wit:

1. The advertisement for bids is illegal in that it asks for bids on the basis of turning over the use of the streets of the city to a private corporation, and also all the net proceeds of the operation of the parking meters during the term of the

contract, in such a way as to contravene **Article VIII, Section 6 of the Constitution of Ohio.**

2. The advertisement for bids is illegal and invalid in that at the time the bids were sought and received there was no city ordinance providing for the installation of meters in the city streets, the fees to be collected by the meters, or the methods of enforcement, and that said advertisement is so indefinite as to make it impossible for fair competition under it.

3. Ordinance No. 1682 is illegal and invalid because it has more than one subject.

4. The bid of The Buckeye Incubator Company does not conform to the advertisement for bids and any award based thereon violates the laws of Ohio relating to competitive bidding for public contracts.

5. The contract is void because it is based on the advertisement for bids had and bid made before any legislation had been enacted authorizing the Director of Service and Safety to contract for parking meters.

6. The contract is void because not approved by the Board of Control.

7. The contract is void because no certificate made by auditor as to funds applicable to contract, as prescribed by §5625-33(d) GC.

8. The contract is a gift to The Buckeye Incubator Company of right to place and operate parking meters on the streets of the city and is for that reason contrary to the constitution and laws of Ohio.

9. The contract is illegal and invalid for the reason it was not prepared or approved by the City Solicitor before it was signed.

10. The contract is void and invalid because it does not conform to the requirement of the advertisement for bids, that: "The bidder shall state for what period of time, if any, they will service the meters in operation and shall further specify within what period of time such meters shall be serviced or repaired after report has been made of such need by the city."

11. The contract is void and invalid for the reason it was signed for the purpose of forestalling the injunction against its execution which the city knew was then being sought by plaintiff.

12. The contract is void and invalid in that it contains the following paragraph which was not authorized by the advertisement for bids:

"If at any time during the term of this lease, or any renewals thereof, any taxes are levied upon the meters herein leased, which are the property of the company, such as personal property taxes, sales tax, excise or license or use tax, or taxes of any nature, such taxes will be advanced by the Company and the City shall reimburse the Company in full for all taxes or assessments or license fees so advanced only from the gross receipts of the meters before the net revenue is computed for the purpose of determining the amount of rental which The Buckeye Incubator Company received and which may be credited against the purchase price."

In his brief filed herein, the plaintiff claims two additional grounds for relief not based on any pleaded facts. These grounds are as follows:

A. That the bid upon which the contract purports to be based, is the bid of The Buckeye Meter Company and not the bid of The Buckeye Incubator Company.

B. That the performance bond purports to secure the performance of a contract dated March 16, 1942, and consequently does not secure the performance of the contract in issue which is dated May 16, 1942, and was executed and delivered May 18, 1942.

The plaintiff's contentions will be considered in the order hereinabove mentioned.

1. By the provisions of §3 of Art. XVIII of the Constitution of Ohio, conferring on municipalities all powers of local self-government, general power is conferred on municipalities to acquire property by lease with the privilege of purchase, for any municipal purpose authorized by law, and to hold, manage and control it and make any and all rules and regulations by ordinance or resolution that may be required to carry out fully all the provisions of any lease by which it may acquire property; and by the provisions of §3615 GC, such power is specifically conferred; and under the provisions of §3616 GC, the council of a municipality may provide by ordinance or resolution for the exercise of such power.

Ordinance No. 1674 authorizing and directing the Director of Service and Safety of the city to advertise for bids for parking meters, and the advertisement for bids, constitute an exercise of this power by the city.

There is no term or condition stated in the advertisement for bids, which in any way contemplates the turning over of the use of the streets of the city to a private corporation; and

when the advertisement is considered as a whole it is clear that it does not contemplate that the successful bidder shall receive as rental, all the receipts from the meters during the nine months' trial period or until such meters are fully paid for, but only contemplates that such rental for the meters as the successful bidder quotes and receives during the nine months' trial period or until the meters are fully paid for, shall be paid to the successful bidder out of the receipts from the meters after the cost of collecting deposits in the meters is deducted.

Both Ordinance No. 1674 and the advertisement for bids merely contemplate the receipt of bids for the acquiring by the city, of parking meters upon a lease with privilege of purchase.

Article 8, Section 6 of the Constitution reads in part as follows:

"No law shall be passed authorizing any county, city, town or township, by vote of its citizens, or otherwise, to become a stockholder in any joint stock company, corporation or association whatsoever; or to raise money for, or to loan its credit to or in aid of, any such company, corporation or association. * * *"

In the case of **Wyscaver et v Atkinson et, 37 Oh St p. 80,** it is held that the foregoing constitution provision inhibits the combination, in any form, of the public funds or credit of any county, city, town or township, with the capital of any other person or persons, corporate or unincorporated, for the purpose of promoting any private enterprise whatsoever.

A lease, with the privilege of purchase, of the character contemplated by the ordinance and advertisement for bids, does not come within this constitutional inhibition, as during the period of the lease the property covered by it remains the sole property of the lessor, and when and if the privilege to purchase is exercised, the property becomes the sole property of the lessee; and there does not exist at any time the combination, in any form, of the public funds or credit of the lessee municipality with the lessor corporation.

For the reasons mentioned, the first ground for injunctive relief is without merit.

2. Municipalities are authorized by law to regulate traffic, and the acquirement of parking meters is incidental to the exercise of such authority; and being incidental, constitutes a municipal purpose authorized by law within the

meaning of §3615 GC, for which municipalities are authorized to acquire property by lease, with privilege of purchase.

The authority conferred is general and its exercise by way of authorizing advertisement for bids, and receiving bids, is not in any way dependent upon the existence of an ordinance providing for the installation of parking meters in the city streets, or the fees to be collected by the meters, or the method of enforcement.

The enactment of such an ordinance might reasonably be wholly dependent upon the nature of the bids received upon such advertisement.

As appears from the statement of facts, the present stage of development of parking meters is such that it is impossible to draw structural specifications upon which competitive bidding may be based, as specifications particularly and exactly describing one meter would necessarily exclude others, thus precluding competitive bidding.

The law does not require the performance of the impossible, so that where the property which a municipality desires to acquire is, as in this case, of such character that structural specifications cannot be drawn so as to permit competitive bidding based thereon, the omission of the structural specifications from the advertisement for bids does not render the proposal to receive bids indefinite or invalid by reason of not providing such basis for competitive bidding.

While structural specifications as a basis for competitive bidding are not incorporated in the proposal to receive bids, the terms of the proposal are definite and are of such character as to permit fair competition among the bidders.

This being the case, the second ground for injunctive relief is without merit.

3. As appears from the statement of facts, all of the provisions of Ordinance No. 1682 are germane to the subject of the parking of vehicles in the City of Bellefontaine, and consequently the ordinance does not violate the provisions of §4226 GC, requiring ordinances to be limited to one subject. **Priest v City of Wapakoneta et, 8 OO 439.**

4. The bid of The Buckeye Incubator Company, except as to the alternative set forth in paragraph five thereof, conforms in all respects to the advertisement for bids. This alternative is based on a misconception of the terms of the advertisement, which are considered in our discussion of the first ground for injunctive relief. This alternative was not accepted by the city and is not incorporated in the contract so

that its inclusion in the bid in no way affects the validity of the bid or the contract based thereon.

5. This ground for injunctive relief is based on the provisions of §4328 GC, relating to the letting of contracts by the director of service of a municipality, reading as follows:

"* * * When an expenditure within the department other than the compensation of persons employed therein, exceeds five hundred dollars, such expenditure shall first be authorized and directed by ordinance of council. When so authorized and directed, the director of public service shall make a written contract with the lowest and best bidder after advertisement for not less than two nor more than four consecutive weeks in a newspaper of general circulation within the city."

The expenditure contemplated by the contract by way of rentals and/or of purchase (if the privilege of purchase is exercised) exceeds the sum of five hundred dollars. The fact that the contract comprehends an escape clause whereby the city has the right to order the removal of the parking meters at any time, upon thirty days notice, during the nine months' trial period, at the expense of the company, and might, by doing so promptly after installation of the parking meters, limit the actual expenditure under the contract to less than five hundred dollars, does not change the amount of the expenditure contemplated by the contract as being in excess of five hundred dollars, as until the city exercises its right under such escape clause, the expenditure contemplated by the contract is in excess of five hundred dollars.

The funds out of which such expenditure is to be made, although not raised by taxation, are public funds.

From the terms and context of the statutory provision last mentioned it is clear that it is the legislative intent that such provisions should operate as a limitation on the expenditure of public funds whether such funds are derived from taxation, or otherwise.

The contemplated expenditure being in excess of five hundred dollars and the funds from which it is to be expended being public funds, the contract comes within the purview of the statutory provision mentioned.

Ordinance No. 1674 did not authorize or direct the Director of Service and Safety of the city to enter into any contract for acquiring parking meters, and there was no ordinance or statute in existence at the time of the advertisement for and the receipt of bids, authorizing or directing the Director to

enter into such contract. Consequently any authority the Director had to enter into the contract in question, is conferred by Ordinance No. 1682 which was not adopted and did not become effective until after advertisement for bids had and bids received, as hereinbefore mentioned.

Section 5 of the ordinance mentioned does confer power and authority upon and directs the Director to enter into a contract for 200 parking meters, more or less, after due advertisement had according to law, after approval by the Board of Control of the city of Bellefontaine, with the lowest and best bidder furnishing, installing and leasing to the city of Bellefontaine, 200 parking meters, more or less, upon terms identical with those set forth in the advertisement for bids, the bid of The Buckeye Incubator Company and the contract entered into between the city and The Buckeye Incubator Company.

The contract was made after this ordinance authorizing and directing the Director to make the expenditure contemplated thereby upon the terms mentioned therein became effective, so that the making of such expenditure in the manner prescribed in the contract conforms to the requirement of the first clause of said statutory provision.

The contract was also made with the lowest and best bidder after advertisement, as prescribed in the second clause of said statutory provision, unless the fact that such advertisement was had pursuant to Ordinance No. 1674, prior to the effective date of Ordinance No. 1682, constitutes a noncompliance with such statutory provision.

It will be noted that under the second clause of this statutory provision the power of the Director to make a written contract after authorization and direction, is limited only by the condition that the contract shall be made with the lowest and best bidder after advertisement as therein provided, and there is no requirement that such advertisement shall be had after such authorization and direction.

The purpose of this provision is to require competitive bidding upon contracts coming within its purview.

Under the provisions of §3, **Art. XVIII of the Constitution**, and **§§3615 and 3616, GC,** full power and discretion was vested in the city to provide by ordinance for the receipt of bids of the character in question, either prior to, concurrent with, or subsequent to authorizing by ordinance the making of the contract.

The terms of the advertisement published by the Director, pursuant to ordinance authorizing the Director to advertise

for bids, were such as to provide for competitive bidding in conformity with the purpose of the second clause of the statutory provision mentioned and the making of the contract authorized by the ordinance subsequently adopted, based on this advertisement and on the receipt of bids pursuant thereto, conforms in all respects with the second clause of such statutory provision.

The making of the contract in the manner it was made also conforms to the provisions of the ordinance authorizing the making thereof, with reference to competitive bidding, as in this respect the provisions of the ordinance are the same in legal effect as the requirements of the second clause of the statutory provision mentioned.

The contract as made, therefore conforms to all the requirements of said statutory provision as well as to all the requirements relating to the same subject-matter of the ordinance authorizing the same, and the fifth ground for injunctive relief is without merit.

6. As shown by the statement of facts, the contract was approved by the Board of Control of the city before it was executed, although minutes of such approval were not entered upon the record of the board.

The provisions of the statute as to the recording of actions of the board are directory and not mandatory, so that such approval is effective although not entered upon the records of the board. Such entry may be made at any time to conform with such directory requirement.

7. The provisions of §5625-33(d) GC, have application only to disbursements made by municipalities, of funds arising from a levy on the general tax list. **Comstock et v Incorporated Village of Nelsonville et, 61 Oh St 288, at page 294. Holland et v Grafton, 24 Abs 642, at page 644.**

As the funds applicable to the payments required to be made by the contract do not arise from a levy on the general tax list the provisions of §5625-33(d) are not applicable thereto, and no certificate of the auditor was essential to the validity of the contract.

8. The discussion of ground one for injunctive relief is applicable to this ground.

For the reasons mentioned in such discussion, the contract does not constitutte a gift to **The Buckeye Incubator Company**, of the right to place and operate parking meters on the streets of the city, and is not contrary to the constitution and laws of Ohio.

9. While §4305 GC, provides that the solicitor shall prepare all contracts, bonds and other instruments in writing in which the city is concerned, such provisions are mere directory.

As shown by the statement of facts, the city solicitor partially prepared and fully. approved the contract in question, which constitutes compliance with the requirement of this section. The contract was therefore valid notwithstanding it was not fully prepared by the city solicitor.

10. The contract fully complies with. and conforms to the requirement of the advertisement for bids that the bidder shall state for what period of time, if any, they will service the meters in operation and shall further specify within what period of time such meters will be serviced or repaired after report has been made of such need by the city.

11. Until the action for injunction was filed and temporary injunction allowed, and service had on the city, the city had the legal right right to proceed with the execution of the contract, so this ground is without merit.

12. The provision of the contract which is the subject of ground twelve for injunctive relief merely provides that in the event certain taxes are levied upon the parking meters during the term of the lease, which the lessor company is required to pay, the amount so paid by it shall be considered as part of the purchase price of the meters, in addition to the price quoted in case the city exercises its privilege of purchase.

It is in strict conformity with the advertisement for bids and is a valid condition of the bid and contract.

Plaintiff's right to relief is limited to the allegations of his petition and amendment and supplement to the petition, but we will nevertheless consider the two additional grounds for relief argued in plaintiff's brief, not based on any pleading of facts.

A. The bid discloses that the Buckeye Meter Company is a division of and owned by The Buckeye Incubator Company. The legal effect of such disclosure is to constitute The Buckeye Incubator Company the bidder.

B. While the performance bond in terms purports to secure the performance of the contract dated March 16, 1942, the contract dated May 16, 1942, which was executed and delivered May 18, 1942, as shown by the statement of facts, is attached to the bond and, by reference in the bond, made a part of it, which has the legal effect of identifying the contract dated May 16 1942, as being secured by the bond.

For the reasons mentioned, none of the grounds assigned by plaintiff for injunctive relief have any basis in law or equity. Consequently the court finds on the issues joined, in favor of the defendant, and dismisses plaintiff's petition at his costs and remands the cause for execution.

JACKSON and CARPENTER, JJ., concur.