**GRENDELL et al., Appellants,**

v.

**OHIO ENVIRONMENTAL PROTECTION AGENCY et al., Appellees.**

[Cite as *Grendell v. Ohio Environmental Protection Agency* (2001), 146 Ohio App.3d 1.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 20237.

Decided Sept. 12, 2001.

2

*Gerald W. Phillips,* for appellants.

*Betty D. Montgomery,* Attorney General, *Douglas A. Curran* and *Yanna Robson–Higgins,* Assistant Attorneys General, Environmental Enforcement Section, for appellee Ohio Environmental Protection Agency.

*Stephen W. Funk, Ronald S. Kopp* and *Thomas M. Skove,* for appellee Envirotest Systems Corp.

---

BATCHELDER, Presiding Judge.

Appellants, Timothy J. Grendell, Greg A. Bell, Keith Echmeyer, Ohio Development Company, LLC, Coalition Against Testing, and Coalition to Repeal Ohio E Check, have appealed from the decision of the Summit County Court of Common Pleas granting judgment to appellees, Ohio Environmental Protection Agency

along with its director (collectively referred to as "OEPA"), and Envirotest Systems Corporation ("Envirotest"). We affirm.

## I

R.C. 3704.14 was enacted by the General Assembly to implement a motor vehicle inspection and maintenance ("E-check") program in order to comply with the federal Clean Air Act Amendments, Section 7401, Title 42, U.S.Code. See R.C. 3704.14(A)(2) and 3704.14(B). The Ohio statute requires motor vehicle emissions testing in Ohio counties that have not achieved compliance with federal standards for carbon monoxide or ozone. See R.C. 3704.14(B). The legislation provides that the inspections of the emissions control systems are to be conducted by private contractors. See R.C. 3704.14(D). Accordingly, OEPA, an administrative agency of the state of Ohio, contracted with Envirotest, a private corporation, to build and operate a mandatory automobile inspection and maintenance program in Cuyahoga, Summit, Portage, Medina, Lake, Lorain, and Geauga Counties for the period from January 2, 1996 until December 31, 2005.

## II

The present declaratory judgment action was commenced on November 17, 1998. Through this action, appellants have challenged the constitutionality of certain aspects of R.C. 3704.14, as well as the validity of certain aspects of the contract between OEPA and Envirotest, drawn pursuant to the statute. The following claims were raised below: (1) the contractual terms and the statutory provisions of R.C. 3704.14(D)(6)(c), allowing for liquidated damages in the event of the premature termination of the E-check program, violate the prohibition against the credit of the state being given or loaned to, or used in aid of any association or enterprise, as set forth in Section 4, Article VIII of the Ohio Constitution; (2) the contractual terms, particularly those authorizing the sharing of inspection fees and cost savings between Envirotest and OEPA, and the statutory provisions that permit the contract, constitute a joint venture association or joint association in violation of Section 4, Article VIII of the Ohio Constitution; and (3) the contractual terms and the provisions of R.C. 3704.14(D)(6)(c), authorizing liquidated damages, violate the prohibition against withdrawal of money from the treasury unless pursuant to a specific appropriation of not longer than two years as set forth in Section 22, Article II of the Ohio Constitution.

Appellees answered and sought dismissal of the action on the basis of several affirmative defenses. By journal entry on April 9, 1999, the trial judge ordered the parties to file cross-motions for summary judgment on all issues. On July 26, 2000, the trial court ruled that the liquidated damages provision in R.C.

3704.14(D)(6)(c) was not yet ripe for review and that a provision regarding the "sharing of cost savings" was moot because it was no longer part of the contract between the parties. Additionally, the trial court upheld the constitutionality of R.C. 3704.14, as well as the validity of the contract between OEPA and Envirotest, in regard to challenged matters.

This case presents a purely legal question—whether R.C. 3704.14 and the contract executed pursuant to that statute are consistent with our fundamental law in regard to the challenges raised by appellants. Accordingly, our review is *de novo. Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684.

■ As a preliminary matter, we observe that the statutes of Ohio enjoy a strong presumption of constitutionality. *State v. Hochhausler* (1996), 76 Ohio St.3d 455, 458, 668 N.E.2d 457. A party who contests the constitutionality of an Act of the General Assembly bears the burden of establishing the unconstitutionality of that law beyond a reasonable doubt. *Id.* " 'An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.' " *State v. Cook* (1998), 83 Ohio St.3d 404, 409, 700 N.E.2d 570, quoting *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus. This presumption of validity may not be overcome unless there is a "clear conflict between the legislation in question and some particular provision or provisions of the constitution." *Xenia v. Schmidt* (1920), 101 Ohio St. 437, 130 N.E. 24, paragraph two of the syllabus. Moreover, "it is not the function of a reviewing court to assess the wisdom or policy of a statute but, rather, to determine whether the General Assembly acted within its legislative power." *Austintown Twp. Bd. of Trustees v. Tracy* (1996), 76 Ohio St.3d 353, 356, 667 N.E.2d 1174.

"[It is a] universally recognized principle that a court has nothing to do with the policy or wisdom of a statute. That is the exclusive concern of the legislative branch of the government. When the validity of a statute is challenged on constitutional grounds, the sole function of the court is to determine whether it transcends the limits of legislative power." *State ex rel. Bishop v. Mt. Orab Village School Dist. Bd. of Edn.* (1942), 139 Ohio St. 427, 438, 22 O.O. 494, 40 N.E.2d 913.

Finally, we emphasize that the above-stated standards of review are applied solely as to the limited issues raised by appellants below. The constitutionality of the statute and contract in other regards is not before this court, and we express no opinion beyond what is expressly contained herein.

### III

Accordingly, upon these principles, we consider the errors assigned for review. The first three assignments of error are considered together because appellant argued them jointly.

### First Assignment of Error

"The trial court erred in finding that there is no unconstitutional joint venture between the state of Ohio and Envirotest Systems Corporation when the contract between them provides (a) the state with direction and control over Envirotest and (b) for a sharing of profits and revenues (directly or indirectly) between Envirotest and the state of Ohio."

### Second Assignment of Error

, "The trial court erred in ruling that 'the payment of a portion of the test fee to OEPA does not in and of itself constitute a joint venture' when such sharing of profits and revenues between the state of Ohio and a private corporation, derived by the private business of that corporation, *does violate* Article VIII, Section 4 of the Ohio Constitution." (Emphasis *sic.*)

### Third Assignment of Error

"The trial court erred in granting summary judgment in favor of defendants on the issue of unconstitutional joint venture when the contract between the defendants, on its face, is prima facie evidence of a violation of Article VIII, Section 4 of the Ohio Constitution."

The essence of appellants' argument in these three assignments of error is that the contract between Envirotest and OEPA, as authorized by R.C. 3704.14, violates Section 4, Article VIII of the Ohio Constitution because it provides that (1) the state shares a portion of the inspection fees with a private corporation,[1] and (2) the state has direction and control over a private corporation. Appellants argue that these factors have created a "joint venture," "union," or "business partnership" between OEPA and Envirotest that results in a violation of Section 4, Article VIII of the Ohio Constitution.[2] For the following reasons, we find appellants' argument to be without merit.

---

1. At the trial level, appellants also contested a contractual provision purportedly allowing shared cost savings between the state and Envirotest. The trial court found this issue to be moot because the contracts, as amended, no longer provided for any shared cost savings between Envirotest and OEPA. Appellants have not appealed from or presented any argument disputing the finding that this issue is moot. Accordingly, the issue of shared cost savings is not before this court and is not addressed in this appeal.

2. Appellants have, also, summarily alluded to three additional factors that they claim support a finding of partnership or joint venture. First, they cite a reference taken from a letter from

## A. History and Overview

A brief historical background is relevant for purposes of context. The sections of the Ohio Constitution relevant to this discussion, Sections 4 and 6 of Article VIII, were adopted following the Constitutional Convention of 1850–1851 in response to events of the early part of the nineteenth century. In an effort to encourage development at that time, Ohio and its subdivisions undertook the financing of railroad and canal companies by lending credit to and purchasing stock in aspiring new ventures. While these investments had the desired result of producing an effective transportation network, they also put public resources at risk. When many of the private interests failed, public debt soared and heavy taxation followed. As a result, Section 4, Article VIII, concerning state involvement in private enterprise, and Section 6, Article VIII, concerning the involvement of counties, cities, towns, or townships in private enterprise, were made a part of the Ohio Constitution. See, generally, *C.I.V.I.C. Group v. Warren* (2000), 88 Ohio St.3d 37, 39–40, 723 N.E.2d 106; *Walker v. Cincinnati* (1871), 21 Ohio St. 14, 53–54, 1871 WL 34; Gold, Public Aid to Private Enterprise Under the Ohio Constitution: Sections 4, 6, and 13 of Article VIII in Historical Perspective (1985), 16 U.Tol.L.Rev. 405, 407–423.

Section 4, Article VIII of the Ohio Constitution provides as follows:

"The credit of the state shall not, in any manner, be given or loaned to, or in aid of, any individual association or corporation whatever; nor shall the state ever hereafter become a joint owner, or stockholder, in any company or association in this state, or elsewhere, formed for any purpose whatever."

Section 4 of Article VIII has been found to impose a limitation upon the state, "similar to that prescribed in the sixth section" of Article VIII, which applies to counties, cities, towns, and townships. *Walker*, 21 Ohio St. at 52. The analysis utilized in cases brought under Section 6 has been applied to cases challenging involvement by the state or its agencies brought under Section 4 of the same

---

Envirotest to OEPA, stating that despite difficulties in the startup of the program, Envirotest "looks forward to continuing its partnership with the Ohio EPA[.]" Second, Envirotest is permitted a government rate for an E-check consumer telephone number. Third, the state and Envirotest participate together with respect to public relations endeavors.

None of these complaints is persuasive on the ultimate question before us. The first is a casual reference that suggests a cooperative approach as opposed to a legal status. The second does not create joint ownership of assets and is in recognition of the fact that this is a state-mandated program providing a public service. See R.C. 3704.02 and 3704.14(M). As to the third, Envirotest is required to design and implement a public education program that is subject to the approval of OEPA. R.C. 3704.14(D)(2)(g) and 3704.14(D)(6)(b). The supervisory involvement by OEPA on this point does not rise to the level of a violation of Section 4, Article VIII of the Ohio Constitution.

article. See, *e.g., State ex rel. Eichenberger v. Neff* (1974), 42 Ohio App.2d 69, 74–75, 71 O.O.2d 443, 330 N.E.2d 454.

However, a comparison of these two sections in Article VIII of the Ohio Constitution reveals that, while similar, they are not identical. For example, Section 6 does not include the explicit prohibition against joint ownership found in Section 4.

Section 6, Article VIII of the Ohio Constitution provides:

"No laws shall be passed authorizing any county, city, town or township, by vote of its citizens, or otherwise, to become a stockholder in any joint stock company, corporation, or association whatever; or to raise money for, or to loan its credit to, or in aid of, any such company, corporation, or association * * *."

In general, Article VIII has been said to be an expression of concern with placing public tax dollars at risk to aid private enterprise. *State ex rel. Petroleum Underground Storage Tank Release Comp. Bd. v. Withrow* (1991), 62 Ohio St.3d 111, 114, 579 N.E.2d 705, citing *Walker,* 21 Ohio St. at 53–56. The state has expressed its interest in not placing state tax dollars at risk in unwise investments. *Withrow,* 62 Ohio St.3d at 114, 579 N.E.2d 705. "It is this pledge of tax revenue which makes the notes or bonds issued by the respondents an unconstitutional act." *State ex rel. Ryan v. City Council of Gahanna* (1984), 9 Ohio St.3d 126, 129, 9 OBR 377, 459 N.E.2d 208.

### B. Facts of the Present Case

OEPA is charged with the implementation and supervision of the E-check program. R.C. 3704.14(B). The director of OEPA issues and awards contracts for the operation of inspection stations, R.C. 3704.14(D)(1), and establishes rules governing inspection procedures, R.C. 3704.14(B)(3), record-keeping, R.C. 3704.14(B)(4), quality control, R.C. 3704.14(B)(9), and operations, R.C. 3704.14(B)(13), (14), and (15). Envirotest, on the other hand, is required to enter into leases for necessary land, building, and structures, R.C. 3704.14(D)(6)(a), and provide equipment, parts, tools, services, personnel, supplies, materials, and program software and software updates. R.C. 3704.14(D)(6)(b). The contractor is required to assume all initial capital investment costs of the program and amortize such costs over the period of the contract. R.C. 3704.14(D)(1).

The director of OEPA establishes the inspection fees to be paid by motorists, and such fees are required to be sufficient to pay the contractor's compensation, plus the costs of OEPA in implementing and administering the program. R.C. 3704.14(D)(7). The contractor collects the fees, forwards the portion due to the OEPA, and keeps the remainder. R.C. 3704.14(D)(1) and 3704.14(D)(8). No general revenue funds may be used to pay any contractor. R.C. 3704.14(D)(1). Instead, the contractor's payment comes from the inspection fees. R.C.

3704.14(D)(1). The director of OEPA credits the portion of inspection fees he receives to the motor vehicle inspection and maintenance fund. R.C. 3704.14(D)(9). The moneys in that fund are used solely for administration, supervision, enforcement, and public education concerning the E-check program. R.C. 3704.14(I).

## C. Legal Analysis

### 1

Over one hundred thirty years ago, the Supreme Court of Ohio upheld the right of the city of Cincinnati to use public funds to build a railroad "on [its] own sole account[.]" *Walker*, 21 Ohio St. at 40. In the course of so doing, the court explained that Section 6 of Article VIII would prohibit a public-private "business partnership," or "the union of public and private capital" in profit-making endeavors where public funds may be placed at risk. *Id.* at 54. The *Walker* court recognized Section 6 as imposing a prohibition against an "alliance between public and private interests[.]" *Id.*

Subsequent cases have explained the sort of partnerships or unions that are barred by the Ohio Constitution. In *Alter v. Cincinnati* (1897), 56 Ohio St. 47, 46 N.E. 69, the Supreme Court of Ohio considered legislation which permitted city commissioners to contract with a private entity to construct additional water works, then to be connected to existing public water works. The utility would be owned by the entity constructing it and the city would lease the privately owned water works from those owners. When connected, the new and existing water works would constitute a "single whole" and would be owned in part by the city and in part by the private entity. *Id.* at 66, 46 N.E. 69. The court found this "close connection and dependence one upon the other" to violate the Ohio Constitution. *Id.* The *Alter* court indicated that the result might be different had the city leased a building or plant owned by another that "would stand upon its own merits" and not "become merged" into the publicly owned property. *Id.* at 66–67, 46 N.E. 69. Other cases considered a variety of public-private arrangements. See, *e.g., State ex rel. Wilson v. Hance* (1959), 169 Ohio St. 457, 8 O.O.2d 471, 159 N.E.2d 741, paragraph three of the syllabus (city is prohibited from owning a part of property which is owned partially by another, so that the parts owned by both, when taken together, constitute but one property); *State ex rel. McElroy v. Baron* (1959), 169 Ohio St. 439, 444, 8 O.O.2d 457, 160 N.E.2d 10 (prohibits "commingled" property); *Brewster v. Hill* (1934), 128 Ohio St. 343, 190 N.E. 766 (private generating machinery to be joined with publicly financed distribution system was forbidden as creating a "common pool"); *State ex rel. Campbell v. Cincinnati Street Ry. Co.* (1918), 97 Ohio St. 283, 119 N.E. 735 (prohibited "joint owners of indivisible interests" or "intermingling"); *Eichenber-*

*ger*, 42 Ohio App.2d at 73–75, 71 O.O.2d 443, 330 N.E.2d 454 (joinder of land owned by the state with improvements by a private lessee creates the sort of "integral whole" that has been found to violate the joint owner clause of Section 4). Where, however, ownership of public property is kept "separate and distinct" from privately owned property, the court has found no prohibited business partnership. *Campbell*, 97 Ohio St. at 306, 119 N.E. 735.

The matter before this court includes neither the joint ownership of any property nor the investment of public revenues in Envirotest's business operations.[3] Reimbursement of expenses comes only through inspection fees paid by motorists. The property interests of each party are separate and not commingled in a single enterprise. There is no common pool of property or assets which makes each party dependent upon the other. The objectives, roles, and responsibilities of each party are separately structured. A review of the statutory scheme and contract in light of the arguments lodged by appellants does not suggest that the E-check program creates a single, integral entity, owned partly by private interests and partly by the public, such that it violates the constitutional provisions of Section 4, Article VIII as interpreted by the Ohio courts.

2

Additionally, the elements of the E-check program do not meet the more formalized requirements of a joint venture or business partnership as established under Ohio law. Appellants submit as evidence in support of their argument that Envirotest and OEPA are involved in a joint venture or business partnership, the fact that Envirotest and the state share the inspection fees derived from the E-check program and also the fact that OEPA controls the program.[4] Assuming, without deciding, that a formal joint venture or business partnership, otherwise established, would create a conflict with Section 4, Article VIII of the Ohio Constitution, we conclude that appellants have not established that the E-check program at issue in this case creates a joint venture or business partnership.

---

3. In this regard, appellants have included an affidavit that presents a conclusion without underlying facts. The affidavit claims that the state has expended funds and resources from general revenue dollars through the negotiation of contracts with E-check providers and in defense of litigation. A proper affidavit must set forth facts and not legal conclusions. *Wall v. Firelands Radiology, Inc.* (1995), 106 Ohio App.3d 313, 335, 666 N.E.2d 235. The failure to do so means that appellants have not complied with Civ.R. 56(E).

4. It is of interest that the explicit language of neither Section 4 nor Section 6 of Article VIII of the Ohio Constitution employs the term "joint venture." Significantly, we have found only a few court decisions that consider the term in regard to these sections. See *State ex rel. Tomino v. Brown* (1989), 47 Ohio St.3d 119, 121–122, 549 N.E.2d 505; *Lazarus v. Hamilton Cty. Bd. of Commrs.* (C.P.1966), 6 Ohio Misc. 254, 260, 35 O.O.2d 444, 217 N.E.2d 883; see, also, *State ex rel. Eichenberger v. Neff* (1974), 42 Ohio App.2d 69, 71 O.O.2d 443, 330 N.E.2d 454 (using the word "venture" only in its unofficial syllabus and not in the text of the opinion).

■ The Supreme Court has explained that a joint venture is " 'an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, without creating a partnership, and agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers * * *.' " *Al Johnson Constr. Co. v. Kosydar* (1975), 42 Ohio St.2d 29, 71 O.O.2d 16, 325 N.E.2d 549, paragraph one of the syllabus, quoting *Ford v. McCue* (1955), 163 Ohio St. 498, 56 O.O. 410, 127 N.E.2d 209, paragraph one of the syllabus. Applying this definition to the facts before us, we find that the relationship between the state and Envirotest does not meet the test of a joint venture.

First, there is no evidence tending to show that the state and Envirotest actually intended to become joint venturers or joint owners. Their objectives differ—the state's objective is the control of air pollution and lawful administration of the E-check program, while Envirotest's objective is the administration of a for-profit business.

■ Next, the parties to a joint venture must have "a community of interest in the purpose of the undertaking, and equal authority or right to direct and govern the movements and conduct of each other in connection therewith." *Ford*, 163 Ohio St. at 502–503, 56 O.O. 410, 127 N.E.2d 209. "In a joint adventure each adventurer is a principal with power of direction and control as to his coadventurers, and each of the other adventurers is his agent within the scope of the enterprise in which they are all engaged." *Id.* at 503, 56 O.O. 410, 127 N.E.2d 209. Where, as in the case at bar, the contract clearly outlines each party's separate role in the operation of a program and those roles are distinctive as to such matters as legal ownership of property, control over day-to-day operations, construction, maintenance, employee management, and establishment of fees, the evidence will not demonstrate that there was joint control or a community of interest. *Sylvester Material Co., Inc. v. Environmental Network & Mgt. Corp.* (1999), Seneca App. No. 13–99–40, unreported, 1999 WL 1243209.

■ Third, neither party has the authority to equally direct and control the other with respect to "all aspects of the [alleged] enterprise." *Clifton v. Van Dresser Corp.* (1991), 73 Ohio App.3d 202, 211, 596 N.E.2d 1075. A joint venture does not exist unless both parties have the equal authority and the right to direct and control all aspects of the enterprise. *Id.* While OEPA supervises the program, Envirotest is not equally involved in directing and controlling OEPA's involvement.

As to the element of shared profit and loss, the Ohio Supreme Court has written:

"A profit jointly sought in a single transaction by the parties thereto is the chief characteristic of a joint business adventure, and the profit accruing must be joint and not several. There must also be a sharing of losses as well as profits." (Citations omitted.) *Ford*, 163 Ohio St. at 503, 56 O.O. 410, 127 N.E.2d 209.

In the case at bar, there is no agreement between the state and Envirotest to share profits and losses. Pursuant to statute, OEPA establishes the inspection fee, which is to be sufficient to provide compensation to Envirotest as well as its own expenses in "implementing and administering" the program. R.C. 3704.14(D)(7). The contract provides that Envirotest retains a specified portion of the testing fee and then remits the balance to the state. Envirotest and OEPA have not created a joint venture solely by virtue of their agreement that the state would receive a portion of the inspection fees collected by Envirotest. The inspection fee is not a profit "jointly sought." See *Ford*, 163 Ohio St. at 503, 56 O.O. 410, 127 N.E.2d 209. Furthermore, appellants have not presented any evidence demonstrating that Envirotest and OEPA share losses.

"The constitution does not forbid the employment of corporations, or individuals, associate or otherwise, as agents to perform public services; nor does it prescribe the mode of their compensation." *Taylor v. Ross Cty. Commrs.* (1872), 23 Ohio St. 22, 78, 1872 WL 51. That "is a different thing from investing public money in the enterprises of others, or from aiding them with money or credit." *Id. Taylor*, thus, established that a public entity may, indeed, hire a private company to perform a public service. Furthermore, it is not unconstitutional for the state to enter into a contract and receive a percentage of a corporation's gross revenues or earnings. In *Cincinnati v. Dexter* (1896), 55 Ohio St. 93, 44 N.E. 520, the Ohio Supreme Court held that a city may sell a railroad and receive a percentage of the future earnings as part of the sale price. This was not found to be an alliance of public-private capital. In *Hines v. Bellefontaine* (1943), 74 Ohio App. 393, 28 O.O. 538, 57 N.E.2d 164, the court found that a city may enter into a contract to lease parking meters from a private company and receive a portion of the revenue from the meters. Receipt of a portion of the revenues in this manner will not make the public entity a joint owner or create a partnership with the private entity.

In this case, OEPA received a portion of the inspection fees, not profits, and does not share in losses. Moreover, OEPA is bound to credit those fees to the motor vehicle inspection and maintenance fund and use it solely for administration, supervision, enforcement, and public education concerning the program. R.C. 3704.14(D)(9) and (I). Further, appellants cite no case, nor are we aware of any, that affirmatively supports their argument that the state's receipt of a small

portion of the inspection fees to cover its administrative expenses creates a joint venture. For all of these reasons, the facts of this case do not bring the E-check program within the definition of a joint venture.

 Similarly, a partnership exists where there is "[1] an express or implied partnership contract between the parties; [2] the sharing of profits and losses; [3] mutuality of agency; [4] mutuality of control; and [5] co-ownership of the business and of the property used for partnership purposes or acquired with partnership funds." *Anchor v. O'Toole* (C.A.6, 1996), 94 F.3d 1014, 1024. No express or implied partnership contract between the parties has been presented to this court. As discussed above, there is no sharing of profits and losses or mutuality of agency or control. The E-check program does not provide for the co-ownership of any private property or the investment of any taxpayer funds in a private corporation. Thus, neither R.C. 3704.14 nor the contract between OEPA and Envirotest evidences a joint venture or partnership between the state and Envirotest.

3

Appellants have not established beyond a reasonable doubt that R.C. 3704.14, and Section 4, Article VIII of the Ohio Constitution are clearly incompatible. There is no clear conflict between this legislation and the constitutional provision. Nor does the contract between the parties conflict with the Ohio Constitution in regard to the matters raised by appellants. Accordingly, appellants' first, second, and third assignments of error are overruled.

### Fourth Assignment of Error

"The trial court erred, as a matter of law, in granting summary judgment to defendants in this case because the state of Ohio's statutory guarantee of Envirotest's profits generated by its private enterprise constitutes an unlawful use of the 'credit of the state,' in aid of Envirotest, a privately owned business, in violation of Article VIII, Section 4 of the Ohio Constitution."

### Fifth Assignment of Error

"The trial court erred, as a matter of law, in granting summary judgment for defendants because the statutory-contractual E–check scheme violates Article II, Section 22 of the Ohio Constitution since it results in the state of Ohio incurring a contingent future debt for which the general assembly has not already provided an appropriation within the current biennium."

Each of these assignments of error is based upon an application of a liquidated damages clause, located in R.C. 3704.14(D)(6)(c) and Section BB.3 of the contract, that does not become applicable unless and until the state prematurely termi-

nates the E-check program. The trial court ruled that the liquidated damages provision, requiring the state to pay damages in the event of a premature termination of the contract, is an issue that is not ripe for adjudication. In her opinion, the trial judge wrote:

"In the case at bar, this liquidated damages provision which would require the state to pay reasonable compensation to Envirotest in the event that the contract is terminated is an issue which is not ripe for review as this event has not occurred, and may never occur. *Accordingly, it is the opinion of this Court that the issue of liquidated damages for breach of the contract is an issue which is not ripe for review.* Judgment is granted for Envirotest and OEPA on the issue of liquidated damages, as the issue is not ripe for review." (Emphasis added.)

Appellants have failed to challenge the finding of the trial court that the liquidated damages clause presents a question that is not ripe for review. Not only have appellants failed to assign this finding as error, but they have also failed to brief or present any legal argument on the issue. This failure forecloses them from arguing on appeal that the clause is unconstitutional on the merits. The trial court did not decide the constitutionality of the clause on the merits. Rather, it disposed of the claims by deciding that the liquidated damages clause was not ripe for review. With the record in this posture, we cannot reach the question of the constitutionality of the liquidated damages clause because appellants have not pursued the predicate issue, that of ripeness. "Constitutional questions will not be decided until the necessity for their decision arises." *State ex rel. Lieux v. Westlake* (1951), 154 Ohio St. 412, 43 O.O. 343, 96 N.E.2d 414, paragraph one of the syllabus. While these issues may present important questions, they are not properly before this court and are not addressed in this appeal. See App.R. 12(A)(2).

IV

Cross–Assignment of Error

"The trial court erred in concluding that appellants have standing to raise the constitutional claims set forth in the complaint, given that, as the trial court admitted, they have failed to demonstrate that they suffered any individual injuries different from any injury suffered by the public in general."

Appellee Envirotest challenges on cross-appeal, and pursuant to R.C. 2505.22, the finding by the trial court that appellants have standing to assert the constitutional claims that they have raised in this action.

The trial court found that the plaintiffs cannot show that they suffered an individual injury different from an injury that would have been suffered by the public in general. The trial court, however, relied upon *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d

1062, to find that the issues sought to be litigated are "of such a high order of public concern as to justify allowing [the] action as a public action." *Id.* at 474, 715 N.E.2d 1062. Envirotest argues that this position presents an overly broad reading of *Sheward,* since the *Sheward* court itself advised that it would "entertain a public action only '*in the rare and extraordinary case*' where the challenged statute operates '*directly and broadly, to divest the courts of judicial power.*'" (Emphasis *sic.*) *Id.* at 504, 715 N.E.2d 1062.

We do not address this cross-assignment of error, however, because cross-assignments of error by an appellee who has not filed a notice of appeal may be considered only when necessary to prevent a reversal. *Duracote Corp. v. Goodyear Tire & Rubber Co.* (1983), 2 Ohio St.3d 160, 163–164, 2 OBR 704, 443 N.E.2d 184. Where the court of appeals determines that the trial court committed no error prejudicial to the appellant in the errors assigned and argued, App.R. 12(B) requires the appellate court to refrain from consideration of any error assigned and argued in the brief of appellee on cross-appeal. *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph eight of the syllabus. Consequently, we do not consider this cross-assignment of error.

V

Accordingly, finding no merit in any of the errors assigned by appellants for review, the judgment of the trial court is affirmed.

*Judgment affirmed.*

BAIRD and SLABY, JJ., concur.