STATE, EX REL. KUHN ET, TAXPAYERS, PLAINTIFFS, *v.* SMITH ET, DEFENDANTS.

Common Pleas Court, Monroe County.

No. 16335.   Decided August 14, 1963.

HODDINOTT, J. The Monroe Local School District is located in the western portion of Monroe County, Ohio. Its Board of Education operates several schools, including one of eight elementary grades, in the village of Lewisville. Four of these grades are housed in a brick building which formerly was a high school. The other four make use of an old, run-down frame building nearby, which lacks central heating and indoor rest rooms.

The Board also owns the Wayne schoolhouse, built about thirty years ago of wood and brick veneer. This building, which has four classrooms, has not been used for several years. There are no indoor rest rooms. It has a central heating system which would require substantial alterations if the building is to be used again for a school, with a lunch room and rest rooms in the basement. This structure is in a sparsely populated area, more than seven miles away from the Lewisville buildings, along a narrow, winding road, without a hard surface.

On September 12, 1962, the defendants, who are the members of the Board of Education, authorized the use of the Wayne school building for the four upper grades and discontinuance of the use of the Lewisville frame building, starting with the 1963-1964 school year. (Plaintiffs' Ex. 2). On January 12, 1963, the Board authorized Dr. Dewey Pierce, Executive Head of the district, to secure the necessary supplies, equipment and labor to operate the schools of the district within the amounts set up in the annual appropriation resolution, without further authorizing resolutions or approval of warrants. (Court's Ex. 1.)

On April 9, 1963, the Board accepted plans and specifications for repair of the Wayne schoolhouse as prepared by A. H. Moellenkamp, a professional engineer. (Plaintiffs' Ex. 18.) On May 20, 1963, a certificate of approval of the Wayne building plans, with an estimated cost of $20,000, was issued by the Ohio Department of Industrial Relations, Division of Workshops and Factories. (Plaintiffs' Ex. 16.) No modification of this building permit has ever been sought or issued.

Dr. Pierce then ordered building materials for the project. Starting June 7, 1963, and continuing through June 19, 1963, he personally directed several janitors, employed by the

Board on annual contracts, and additional labor, hired by the hour, in remodeling the schoolhouse. Floors were sanded and refinished. New lighting fixtures were installed in the class-rooms. A partition was erected on the first floor to enclose space in which a lunch room was to be installed. This last alteration would not comply with the approved plans and specifications (Plaintiffs' Exhibits 3 and 4) which call for a lunch room in the basement.

The petition in this cause was filed June 11, 1963, praying for a restraining order pendente lite, enjoining the defendants from making any repairs or alterations to the Wayne schoolhouse, purchasing any equipment therefor, and expending any funds for such purposes. A permanent injunction to the same effect was also sought.

The temporary restraining order was not granted. Because of the imminence of a new school year and the importance of the case, it was set for final hearing on June 17, 1963. The defendants did not move for a continuance before or during the trial, but did present their defense.

The district's executive head testified that he was planning to make repairs and alterations costing only about $2,000, rather than the estimated $20,000, so as not to exceed the statutory limit of $4,000 on repair contracts not submitted to competitive bidding. He also stated that $20,000 had not been appropriated for the alterations in 1963, and that their completion would have to wait until additional funds were available.

Before the authorization to use the Wayne building, he had discussed with the Board the use of two school buses to transport students from Lewisville to Wayne and back each day. The problems of such transportation, such as additional time students would be on the buses, the condition and safety of the roads and bridges during all types of weather, the expense of such additional travel, and the coordination of such travel with an adequate school program, were deferred for consideration until August, 1963, the month before the school was to reopen.

At the close of the trial, the defendants were enjoined from proceeding with the present program of repairs to the Wayne schoolhouse.

Defendants filed a timely motion for new trial, alleging these grounds:

1. They were not permitted sufficient time to prepare for the trial.

2. The judgment was not sustained by sufficient evidence and is contrary to law.

3. Several errors of law occurred at the trial to which exceptions were taken.

The first ground for a new trial is not well taken. Syllabus No. 3 of *State* v. *Edwards* (1952), 66 Ohio Law Abs., 479, provides:

When a defendant submits himself to a trial without making a request for a continuance, he waives this constitutional right.

Syllabus No. 1 of *Superior Holding Co.* v. *Kane* (1925), 3 Ohio Law Abs., 538, states:

When a party claims inadequacy of time for preparation of case and it develops that the trial proceeded and evidence was presented, there can be no basis for complaint.

Defendants did not demonstrate in what respects the evidence failed to sustain the judgment, or in what manner it was contrary to law, or what errors of law occurred at the trial. Branches 2 and 3 of the motion for new trial are also insufficient.

The defendants in this cause, without their realizing it, became involved in a serious dilemma. If the approved plans were completed at an estimated cost of $20,000, two statutes would be violated: one is the law requiring school repair projects costing more than $4,000 to be submitted to public bidding; the other requires the Clerk of the Board to certify that the necessary funds have been appropriated. On the other hand, altering the plans or failing to remodel the building in accordance with them without official consent is a serious crime, as will hereinafter appear.

Section 3313.46, Revised Code, reads as follows:

When the board of education determines to . . . repair, . . . or furnish a schoolhouse, or make any improvements or repairs, the cost of which will exceed . . . four thousand dollars, . . . it must proceed as follows:

(A) For the period of four weeks, the board shall adver-

tise for bids in some newspaper of general circulation in the district and two such papers, if there are two. . .

(B) The sealed bids must be filed with the clerk by twelve noon of the last day stated in the advertisement.

(C) The bids shall be opened at the next meeting of the board, be publicly read by the clerk, and entered in full on the records of the board; . . .

(D) Each bid must contain the name of every person interested therein, and shall be accompanied by a bid bond or by a certified check upon a solvent bank, as the board requires, payable to the order of the treasurer of the board of education, in an amount to be fixed by the board or by an officer designated for such purpose by the board, said bond or check to be in no case less than five percent of the amount of the bid and conditioned that if the bid is accepted, a contract will be entered into, and the performance of it properly secured.
. . . .

(F) None but the lowest responsible bid shall be accepted. . . .

(G) The contract must be between the board and the bidders. The board shall pay the contract price for the work at the times and in the amounts provided by Sections 3313.461 and 3313.462, Revised Code.
. . . .

Sections 3313.461 and 3313.462, Revised Code, referred to above, require the board to hold back 5% of the payments to materialmen and contractors for thirty days after the contracts are performed.

This Section 3313.46, Revised Code, is mandatory. *Landis* v. *Board of Education of Brookville* (Montgomery County Court of Appeals, 1933), 16 Ohio Law Abs., 190.

A school repair project cannot be done piecemeal in order to evade the $4000 limitation. In the annotation, 53 A. L. R. (2d), 498, the following appears at page 499:

In determining whether a particular contract is sufficiently large to come within the amount specified in a statute as requiring competitive bids, a question frequently arises as to whether the work involved must be regarded as included in one contract, or whether it may be split up into several smaller

contracts, each of which will be under the minimum requirement of the statute.

When it is apparent that the work has been split up for the purpose of evading the statute, the courts have generally held the contracts to be invalid. On the other hand, if the public officials responsible for letting the contract appear to have acted in good faith, multiple contracts may be upheld even though the total involved in them in the aggregate is greater than the amount specified in the statute.

At page 503 of the above annotation is this discussion of the Ohio cases in point:

In *Wing* v. *Cleveland* (1885), 9 Ohio Dec Reprint, 551, 15 WL Bull, 50, a board of fire commissioners, after advertising for bids for 4,000 feet of hose, proposed to purchase it from two of the bidders who were not the lowest, and in an action brought by a taxpayer were enjoined from doing so. The commissioners, acting upon advice of the city solicitor, then proceeded to buy the hose from the same high bidders in lots not exceeding $500 each in an attempt to comply with the statute which required bids for purchases in excess for $500. The court held that in doing so the commissioners not only had failed to comply with the statute but were also in contempt of the injunction, and ordered that the commissioners repay to the city the amounts which had been paid out for the purchases made in this manner.

It was held in State use of *Ashland County* v. *Snyder* (1904), 2 Ohio N. P. N. S., 261, 14 Ohio Dec N. P., 568, that the statutory requirement of advertising for bids on contracts in excess of $1,000 could not be evaded by eliminating part of a job that would normally be included in the contract. Thus, contracts for bridges were held illegal where the total amount of each contract was just under $1,000 and in some instances the contract excepted the lumber, which the commissioners were to furnish, and in others excepted abutments and piers, which normally would be included in the bridge contract.

Ohio requires competitive bidding even in the situation where (a) materials are bought at a specified price per unit, (b) the total amount actually furnished exceeds the statutory limit, and (c) the purchasing officials could reasonably have antici-

pated that outcome. In a case arising in this Court, *Ludwig Hommell & Co.* v. *Woodsfield* (1927), 115 Ohio St., 675, 155 N. E., 386, plaintiff company contracted with defendant village to furnish electrical supplies for the municipal light plant for one year and to give credit for old meters taken in exchange. The contract was held invalid under a competitive bidding statute with a $500 limit because the total transactions for the year were more than this amount. The court rejected the contention that the separae orders, each of which was under $500, were individual contracts.

Similarly, Ohio courts have rejected contracts for copying county plats at $25 per sheet. *State, ex rel. Baen,* v. *Yeatman* (1872), 22 Ohio St., 546, and for purchasing 200 parking meters with payments to be made from receipts of the meters. *Hines* v. *Bellefontaine* (1943), 74 Ohio App., 393, 57 N. E. (2d), 164, 28 Ohio Opinions, 538, 40 Ohio Law Abs., 505.

The competitive bidding statute cannot be evaded by purchasing only the materials required in a school repair project and having employees of the school district perform the labor. Syllabus No. 3 of *Bolce* v. *Board of Education of Cincinnati* (1934), 22 Ohio Law Abs., 363, 4 Ohio Opinions, 423, reads as follows:

Painting of the interior walls and woodwork of school buildings constitutes improvements or repairs within Section 7623, General Code (now Section 3313.46, Revised Code), and where the cost of the work to be done exceeds $3000 (now $4000) it can only be done in the manner stated in such section, by letting the contract to the lowest responsible bidder after advertising for bids.

Fred L. Hoffman, J., of the Hamilton County Common Pleas Court says at page 364 of the opinion:

The claim is further made that the work should be considered "force account" work, and therefore the board could do the work by employing its own labor. If this be true, any and all kinds of repair work and improvements could be done in this manner irrespective of the amount involved.

The $20,000 project contemplated by the plans is also unlawful because Section 5705.41, Revised Code, cannot be complied with. It provides:

No subdivision or taxing unit shall:

. . . .

(D) Make any contract or give any order involving the expenditure of money unless there is attached thereto a certificate of the fiscal officer of the subdivision that the amount required to meet the same, . . . has been lawfully appropriated for such purpose and is in the treasury or in process of collection to the credit of an appropriate fund free from any previous encumbrances. Every such contract made without such a certificate shall be void and no warrant shall be issued in payment of any amount due thereon. . . .

The clerk of the board, who is its fiscal officer, Section 133.01 (D), Revised Code, cannot make such a certificate because $20,000 was not appropriated for the project.

As to the second horn of the defendants' dilemma, the decision to make repairs costing only $2,000 would violate Section 4107.37, Revised Code.

No architect, builder, or other person shall alter the plans approved in accordance with Section 4107.36, Revised Code, or fail to construct or alter a building in accordance with such plans without the consent of the department that approved them, or without the court of common pleas finding that such order should be set aside.

The Section 4107.36, Revised Code, referred to in the above statute (together with Sections 4107.31 and 4107.02, Revised Code), requires that plans for altering the schoolhouse in this case must first be approved by the chief of the division of workshops and factories.

Violation of the said Section 4107.37, Revised Code, calls for a serious criminal penalty. Section 4107.99 (J), Revised Code, provides:

Whoever violates Section 4107.37, Revised Code, shall be fined not less than five hundred nor more than one thousand dollars or imprisoned not less than thirty days nor more than one year, or both.

The evidence in this case shows that the approved plans for a lunch room in the basement were not followed. Rather, the room was to be constructed on the first floor according to the design of Dr. Pierce and his labor force, unapproved by the state authorities.

Failure to follow approved plans through to completion is also a violation of this Section 4107.37, Revised Code. The division of workshops and factories is charged with the responsibility of safe and sanitary conditions in this school building. Sections 3791.04 and 3781.06, Revised Code. Dangerous and unhealthful conditions might well arise if the job is only partly done.

Since either of the described courses of action would be illegal, it is proper that an injunction issue. Syllabus No. 1 of *Green* v. *State Civil Service Commission et al.* (1914), 90 Ohio St., 252, 107 N. E., 531, is as follows:

A taxpayer may maintain an action to enjoin public officers or a public commission from the commission of acts in excess of legal authority, which contemplates the expenditure of public money.

The evidence showed that consideration of most of the troublesome problems in transporting students to the Wayne schoolhouse had been deferred until August, 1963, the month before the building was to be opened. In commenting on exercise of discretion by a board of education, 48 Ohio Jurisprudence (2d), Schools, Section 80, page 487, says:

The public has the right to their best judgment *after* free and full discussion and consultation among themselves upon the public matters entrusted to them . . . (emphasis added).

The exercise of discretion in this regard has been abused.

Materials purchased for repair of the building are to be returned to the suppliers, if that is possible, and refunds collected. Where materials cannot be recovered, they shall be paid for. In *Ludwig Hommel & Co.* v. *Woodsfield, supra*, Allen, J., says in regard to electric meters furnished the defendant village under an illegal contract, on page 683:

It is urged by the company that the village has accepted and used these meters with no complaint as to quality or service. The fact that the municipality received and used the meters does not estop the municipality from setting up the omission of the statutory requirement as a defense to the action. *City of Lancaster* v. *Miller*, 58 Ohio St., 558, 51 N. E., 52.

Parties who deal with a municipality are bound by the notice which they receive from the statutes to know the extent of

the power and authority of the municipality to contract. *McCloud & Geigle* v. *City of Columbus*, 54 Ohio St., 439, 44 N. E., 95; *Buchanan Bridge Co.* v. *Campbell et al., Com'rs.*, 60 Ohio St., 406, 54 N. E., 372.

Since the contract was invalid, the municipality took no title to the meters under the contract. However the contract was not *malum in se*, it was merely *malum prohibitum*. It did not contravene public policy. Hence the doctrine applies which is laid down in the case of *Hill County* v. *Shaw & Borden Co.* (C. C. A.), 225 F., 475. This case exhaustively discusses the authorities upon this point, and holds that if a political subdivision, such as a county or a municipality, obtains the money or property of others without authority, the law will compel restitution or compensation.

The evidence shows that A. H. Moellenkamp, the professional engineer who prepared the plans adopted by the defendants, has not been paid for his services. If Section 5705.41(D), Revised Code, *supra*, requiring a certificate by the clerk, was not complied with when the agreement was made with him, then payment of his bill would be illegal.

Some of the school district's janitors worked on the Wayne schoolhouse project. The wages provided for in their annual employment contracts may be paid because such contracts are not made illegal under the rules of law discussed above. Wages may *not* be paid to persons hired solely for the repair program. Syllabus No. 2 of *Landis* v. *Board of Education of Brookville, supra,* is as follows:

The principle that the title to property furnished a public body under a contract, void because not complying with statute, does not pass title to the property to the public body, but that the law will compel restitution or compensation, cannot avail one who has furnished only labor, since there is no way of returning this.

Since plaintiffs by their efforts have preserved a fund for the benefit of the taxpayers as a whole, the Court may allow a reasonable fee for their attorney. *State, ex rel. Yontz,* v. *West* (1939), 135 Ohio St., 589, 21 N. E. (2d), 987; *Bedford* v. *State* (1931), 123 Ohio St., 413, 175 N. E., 607.

Motion for new trial overruled.