LAZARUS, A TAXPAYER, *v.* BOARD OF COMMRS. OF HAMILTON COUNTY.

[Cite as Lazarus v. Bd. of Commrs. of Hamilton County, 6 Ohio Misc. 254.]

(No. A215372—Decided April 15, 1966.)

INJUNCTION: Hamilton County Common Pleas Court.

*Mr. Frank J. Longano, Messrs. Douglas & Carlier* and *Mr. Flach Douglas*, for plaintiff.
*Mr. Melvin G. Rueger*, prosecuting attorney, *Mr. Raymond C. Wetherell* and *Mr. John A. Gehrig*, for defendants.

KEATING, J. This cause came on for hearing on its merits and was submitted on the briefs of counsel after waiver of oral argument. The facts are not in dispute, being substantially as set forth below.

On January 13, 1965, the defendant Board of County Commissioners appointed a "County Hospital Commission" of 14 members in accordance with Section 339.14, Revised Code, which provides in part:

"(A) Upon application to the board of county commissioners by an Ohio corporation or corporations, organized for charitable hospital purposes and not for profit, in this section called participating hospital corporations, the board of county commissioners may, after a determination that the preservation of the public health requires additional hospital facilities in the county, appoint a hospital commission * * *, in this section

called the county hospital commission * * * [hereafter follows the requirements for representation on such commission]."

Such appointments were effected by the unanimous adoption of a resolution on that date (Exhibit 3).

On May 4, following, the County Hospital Commission transmitted to the Board of County Commissioners, two resolutions (Exhibit 12) showing the need for additional hospital facilities in the county, and requesting that the county commissioners submit to the electors at the November 2nd general election, the question of the issuance of bonds totalling $19,-817,000.

On June 8, 1965, an agreement was entered into by and between the County Hospital Commission and the Franciscan Sisters of the Poor, St. Clare Province (Exhibit 7), this being identical in all respects to those subsequently adopted by the other participating hospitals, and which essentially provides:

"Now therefore, it is agreed:

"1. The Participating Hospital agrees to execute and deliver to the Hospital Commission, subsequent to approval of the bond issue, a deed of conveyance of land and the grant of such easements as are necessary for construction of buildings and equipment from the proceeds of the bond issue, which are to be leased to the Participating Hospitals, which deed of conveyance shall be so drawn that the Hospital Commission, upon acceptance thereof, shall thereby take title to such land in the name of the County of Hamilton, State of Ohio.

"2. The Participating Hospital may convey the land aforesaid at any time after the execution of this agreement and approval of the bond issue by the electors and will convey such land whenever the Hospital Commission notifies the Participating Hospital that the Hospital Commission is ready and able to proceed with the construction upon such land.

"3. Upon conveyance of land by the Participating Hospital as aforesaid, the Hospital Commission will cause to be executed and delivered to the Participating Hospital a valid lease which shall afford to the Participating Hospital, upon terms hereinafter mentioned, possession of such land together with buildings thereafter constructed thereon and furniture, fixtures and equipment therein as included in Plans and Specifications for use as facilities of a general hospital, such lease to

become effective upon completion of the construction of such buildings or in any event within three years from the date of such conveyance. Said lease shall be for a period of fifty (50) years, renewable for a like term of fifty (50) years, without further notice, for a rent of One Dollar ($1.00) a year and shall provide:

"For the sale of the leased property to the lessee corporation upon unanimous consent of the Board of County Commissioners for a purchase price representing the actual cost to the county not including funds or property donated to the county, less depreciation, computed at the rate customarily applied to similar structures;

"That the Hospital Commission shall have continuing jurisdiction of the hospital facilities constructed on the leased premises provided that the lessee corporation shall be solely responsible for the administration, maintenance and operation of the leased facilities including the selection of personnel;

"That in the event the lessee corporation fails to administer, maintain, and operate the leased hospital facilities as a public general hospital or facility thereof, in accordance with the terms of the agreement, admitting patients to such general hospital without regard to race, creed, or color, then after an opportunity is given by the Hospital Commission to the Participating Hospital to be heard on written charges, said lease shall be terminated by the Hospital Commission, with the consent of the County Commissioners, and the control and management of said hospital facilities together with all additions and equipment as included in Plans and Specifications shall revert to the county to be operated as provided by law;

"Such further terms as may be agreed upon by the Hospital Commission and the lessee corporation with the consent of the County Commissioners * * *."

On June 17, 1965, similar agreements (Exhibits 6 and 8) were entered into by The Jewish Hospital of Cincinnati, Ohio, and Our Lady of Mercy Hospital.

On June 23, 1965, the Board of County Commissioners unanimously adopted a resolution declaring the necessity for an election on the question of the proposed hospital bond issues. (Exhibit 4.)

On July 8, 1965, a leaseback agreement similar in all re-

spects to that of the Franciscan Sisters (Exhibit 7, *supra*) was entered into by the Bethesda Hospital and Deaconess Association (Exhibit 9). The following October, a similar agreement was entered into by the St. George Hospital, which agreement was subsequently rescinded.

On November 2, 1965, at a general election the bond issue was passed with the following question being submitted to the electorate:

### "Proposed Bond Issue

*"A majority affirmative vote is necessary for passage.*

"Shall bonds be issued by Hamilton County, Ohio, for the purpose of CONSTRUCTING, FURNISHING AND EQUIPPING COUNTY HOSPITAL BUILDINGS, in the sum of Nineteen Million Eight Hundred Twenty Thousand Dollars ($19,-820,000); and a levy of taxes be made outside the ten-mill limitation estimated by the County Auditor to three hundred sixty-four thousandths (.364) mills for each one dollar of valuation, which amounts to three and sixty-four hundredths cents ($0.0364) for each one hundred dollars ($100) of valuation, for a maximum period of twenty-three (23) years to pay the principal and interest on said bonds?"

On December 27, 1965, the plaintiff herein by his counsel requested by letter (Exhibit 1), that the prosecuting attorney of Hamilton County file a taxpayer's suit on the former's behalf, which request was denied (Exhibit 2).

On January 19, 1966, the county commissioners adopted the above-mentioned agreements between the participating hospitals and the County Hospital Commission (Exhibit 5), adopted a resolution authorizing the issuance of the bonds (Exhibit 10), and made an offer for the sale of the bonds to the County Sinking Fund, which was forthwith rejected for lack of funds (Exhibit 11).

Plaintiff filed his petition on February 18, 1966, praying that defendant county commissioners be permanently enjoined from issuing such bonds or "making any expenditures for private sectarian hospitals * * *." Five days later this court granted plaintiff's motion for temporary injunction pendente lite, upon the plaintiff giving his bond of $1,000.

Plaintiff seeks to permanently enjoin issuance of the bonds and the expenditure of the proceeds thereof, contending that

first, the purpose as set forth on the November ballot and in the proposed bonds is so inaccurate as to be in violation of law.; secondly, Section 339.14, Revised Code, and the action by defendants in implementing said Code section are in violation of Section 6, Article VIII of the Ohio Constitution; and, thirdly, that the Legislature in enacting Section 339.14, Revised Code, and the defendants in proceeding thereunder, acted in violation of Section 7, Article 1 of the Ohio Constitution and of the First and Fourteenth Amendments of the U. S. Constitution.

Defendant's answer, after admitting the approval of the question of the bond issue at the November 2, 1965, general election, consists of a general denial.

Plaintiff argues that the purpose set forth on the November ballot and in the proposed bonds is so inaccurate as to be in violation of law. The relevant law of Ohio is statutorily set forth in Section 133.13, Revised Code, which provides in part:

"The purposes for which the bonds are to be issued shall be printed in the space indicated, in bold face type of at least twice the size of the type immediately surrounding it. *It is sufficient to indicate such purpose in general language,* as, for insance, "street improvements" or "park improvements" or "extension and improvement of the waterworks system," as the case requires * * *." (Emphasis supplied.)

Plaintiff's complaint seems to be not that what was said was inaccurate, but rather that the ballot did not say enough. Clearly the purpose stated on the November ballot was accurate, even though not as all-inclusive as plaintiff wishes. Such purpose was stated in "general language" as the statute requires. By the very nature of the agreements with the several participating hospitals, the county is to have a fee simple title to the lands and the buildings to be constructed thereon. The title to the hospital buildings being in the county, it is difficult to see how such buildings were not properly labeled "County Hospital Buildings," on the November ballot. The leaseback agreements and the leases to be given thereunder, do not alter the character of the county's fee. The statute quoted above cannot in any way be construed to require that the ballot set forth by whom or how such *county hospital buildings* are to be administered, maintained and operated, and under what sort of arrangements —here, a lease.

Plaintiff cites as authority for his position *Schnoerr* v. *Miller* (1965), 2 Ohio St. 2d 121. That case dealt with an attempt by the Village of Terrace Park to issue bonds for the construction of a bomb shelter where such was denoted as a "public building" on the ballot submitted to the electorate. The court held that such a description was inadequate under Section 133.13, Revised Code, in that the phrase "public building" was too all-inclusive to apprise the voters of the "nature of the actual improvement contemplated." The instant case can be readily distinguished; here hospitals were the nature of the improvement contemplated and hospitals were indicated on the ballot.

In the light of the above, plaintiff's argument relating to the inaccuracy of the purpose stated on the ballot is without merit.

Plaintiff, in the second part of his argument, contends that Section 339.14, Revised Code, and the actions taken by the defendants thereunder are violative of Section 6, Article VIII of the Ohio Constitution which provides:

"No laws shall be passed authorizing any county, * * * by vote of its citizens, or otherwise, to become *a stockholder in any* joint stock company, *corporation,* or association, whatever; *or to raise money for, or loan its credit to, or in aid of,* any such corporation, or association * * *." (Emphasis supplied.)

The first issue presented is whether or not Hamilton County by pursuit of its avowed course of conduct under Section 339.14, Revised Code, will in any way, be or become either a "stockholder in" or lend its credit to any of the above-named "participating hospitals."

The record does not disclose any action which would indicate that the county is now or will become a "stockholder" in any of the hospital corporations.

The second issue presented is whether or not the county is "rais[ing] money for, or loan[ing] its credit to" any of the above-mentioned corporations.

The clear intendment of the constitutional provision is to interdict any joint ventures in profit-making schemes whereby the state or a subdivision thereof is to be a joint venturer. Here the county has entered into agreements unlike many of those which formed the bases of the cases cited by the plaintiff,

and all of which cases may clearly be distinguished on their facts. In the agreements at hand, the filling of a public need, rather than being incidental to the transaction, is the very essence of it.

In *Walker* v. *City of Cincinnati* (1871), 21 Ohio St. 14, 54, 8 Am. St. Rep. 24, the court noted, "In no project originated by individuals * * * *with a view to gain,* are the municipal bodies named permitted to participate in such manner as to incur pecuniary expense or liability." (Emphasis supplied.)

Here we have no splitting of ownership, nor for that matter any ownership in the participating hospitals. There can be no doubt that when monies are to be expended for the construction of "county hospital buildings," in which the fee is in the county, this constitutes but one property—that of the county. Some funds may be expended to build new facilities which will of necessity be either immediately adjacent to or contiguous to existing private facilities. However, the legislators were not unmindful of this contingency, when they provided in division (D) of Section 339.14, Revised Code, that the County Hospital Commission might enter into agreements with the participating hospitals for the use of "common walls in the construction of the *county hospital.*" This does not detract from the fact that no matter how or where situated, the facilities will be a *county* hospital housed in a *county-owned* building on *county-owned* land. *Alter* v. *City of Cincinnati* (1897), 56 Ohio St. 47, on which plaintiff so heavily relies is plainly not in point. Here we have no *joint* ownership and control. (Emphasis supplied.)

While the participating hospital under Section 339.14 (I), Revised Code, is charged with the "administration, maintenance, and operation" of the hospital facilities, the County Hospital Commission is charged with the ultimate authority. In the event the participating hospital fails to comply with the terms of the statute for the operation of a "general hospital," admitting patients without regard to race, creed, or color, division (I) provides that written charges shall be preferred, and the lease shall be terminated, with the leasehold interest reverting to the county. This cannot be construed to find ownership and control partly in the county and partly in the participating hospital. Both continue to be *in the public body.*

Implied approval of the very type of arrangement here

present is found in two of the cases cited by both plaintiff and defendants. In *Taylor* v. *Commissioners,* 23 Ohio St. 22, at page 78, the court said:

"* * * [I]f it shall be deemed wise and economical to authorize municipalities, who own water-works or gas works, to *lease them as a means of supplying the public needs,* we know of *no constitutional impediment.*" (Emphasis supplied.)

To the same effect, see *State, ex rel. Wilson,* v. *Hance,* 169 Ohio St. 457, 466.

Plaintiff synthesizes the bulk of his argument at page seven of his brief, by stating "that there is a joinder of activity in that public money is actually being used to promote the existing private corporations and their existing facilities."

This argument is totally refuted by the clear and unambiguous wording of the statute and the agreements of the parties adopted under the authority of such statute.

No public money is to be expended on existing facilities, but only on county-owned hospital facilities, not yet in existence. Neither is any public money being expended to promote the existing private corporations. It is the lessees who shoulder the burden of administration, maintenance, and operation, as indicated in division (I) of the statute.

Division (G) of Section 339.14, Revised Code, provides as follows:

"All funds arising from a bond issue for the construction of hospital facilities on land conveyed to the county, as provided above, shall be placed in the county treasury to the credit of a fund to be known as the 'county hospital facility fund.' Such fund shall be paid out on the order of the county hospital commission, certified by the chairman and secretary of the commission * * *."

Therefore, in no way, is the public body raising money for, or loaning its credit to, or in aid of, a private corporation as proscribed by Section 6, Article VIII of the Ohio Constitution.

Finally plaintiff contends that the Legislature in enacting Section 339.14, Revised Code, and the defendants by their subsequent proceeding thereunder, acted in violation of Section 7, Article I of the Ohio Constitution, and the First and Fourteenth Amendments to the United States Constitution. In the light of recent decisions by the United States Supreme Court,

the operation of the Fourteenth Amendment makes the First Amendment binding as against the several states. The relevant part of the First Amendment cited by counsel provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof * * *."

Here neither the General Assembly nor the defendants have done anything which may be construed to be either an "establishment" of any one religion over another, or to "prohibit the free exercise [of any religion] * * *."

Section 7, Article I of the Ohio Constitution provides in its relevant parts as follows:

"* * * No person shall be compelled to attend, erect, or support any place of worship, or maintain any form of worship, against his consent, and no preference shall be given, by law, to any religious society; * * *"

Here as has been mentioned several times above, the title to the lands and buildings in question is in the county. There is nothing before us to indicate that the hospitals constructed and operated under the terms of the statute will be anything other than *county general hospitals*. The statute in division (I) provides first, for the character of the hospital as a *general* hospital, and second, for sanctions tantamount to forfeiture of the leasehold interest in the event the admissions requirements set out are not complied with in every respect.

Within the terms of the relevant section of the Ohio Constitution, we have difficulty in finding that the operation of a county hospital unit by an admittedly sectarian group under a lease can result in the compulsion of one "to attend, erect, or support any *place of worship*." Caring for the sick does not constitute the "maintenance of any form of worship," nor a "preference" of any religious group over another.

A situation very close to that presented here is cited to us by the defendant in the case of *Kentucky Building Commission* v. *Effron* (1949), 310 Ky. 355, 220 S. W. 2d 836. The court there noted that the private agency was but a "pipeline" through which the public expenditure was made, "the test being not who receives the money, but the character of the use for which it is expended." The court went on to say:

"* * * the hospitals are open to the public of all creeds and faiths [such a situation obtains in the instant case by operation

of the statute] * * *. Religion is not taught in these hospitals * * *. The fact that members of the governing boards of these hospitals, which perform a recognized public service to all * * * are all of one religious faith does not signify that the money alloted the hospitals is to aid their particular denomination. On the contrary, the governing boards of such hospitals are but the *channels through which the funds flow.* Courts will look to the *use* to which these funds are put rather than to the conduits through which they run * * *." (Emphasis supplied.)

This case was followed in *Abernathy* v. *City of Irvine* (1959), 355 S. W. 2d 159, and in which the United States Supreme Court *denied certiorari.*

For all the foregoing reasons, plaintiff's contention that Section 339.14, Revised Code, and the action by defendants thereunder is violative of Section 7, Article I of the Ohio Constitution, and the First and Fourteenth Amendments to the United States Constitution, is not well taken.

Finding that the three points of plaintiff's argument are without merit, the temporary restraining order should be and hereby is dissolved, with final judgment entered for the defendants herein, plaintiff to abide the costs of this proceeding.

*Judgment for defendants.*