THE STATE, EX REL. EICHENBERGER ET AL., APPELLANTS, V.
NEFF, DIRECTOR, OHIO STATE DEPT. OF PUBLIC WORKS, ET AL.,
APPELLEES.

(No. 74AP-54—Decided September 17, 1974.)

*Messrs. Schottenstein, Garel, Swedlow & Zox, Mr. James D. Schrim II,* and *Mr. Herbert R. Godby,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. Richard A. Szilagyi,* for appellee Roland A. Nesslinger, director, Ohio Department of Public Works.

*Messrs. Bridgewater, Rose & Stimmel,* for appellees the trustees and president of Ohio University.

HOLMES, J. This matter involves the appeal of a judgment of the Common Pleas Court of Franklin County wherein the court entered an order on behalf of R. Wilson Neff, the director of the Ohio Department of Public Works and the other defendants, the latter being the president and the trustees of Ohio University, in an action seeking a declaratory judgment, as well as equitable relief, brought by Jerry A. Eichenberger and others, who are noted in the caption of the case to be taxpayers.

The facts upon which this appeal rests are that the Ohio General Assembly enacted R. C. 123.77, effective November 24, 1967, which section of law provides a method whereby surplus state university lands may be leased to private developers. On May 29, 1970, the president and the board of trustees of Ohio University, a state university, adopted a resolution which provided that pursuant to R. C. 123.77, the university should solicit the assistance of the Ohio Department of Public Works for the purpose of leasing certain properties controlled by the university, commonly known as the East State Street airport lands.

Between May 29, 1970, and July 28, 1972, Ohio University, acting through its duly delegated officers, and the Ohio Department of Public Works, acting through its director, advertised in newspapers of general circulation in Athens and Columbus, Ohio, advising interested parties of the availability of the land for development and requesting written proposals for such development.

A number of written proposals were in fact submitted to the board of trustees and to a subcommittee, which had been appointed to expedite the handling of negotiations for any surplus land development, and on July 28, 1972, the subcommittee of the board recommended, and the full board resolved to accept a proposal submitted by Skilken for one of the parcels involved, and to accept a proposal of the Big Bear Corporation as to another parcel within the designated surplus lands.

The Big Bear Corporation, not being satisfied with the manner of acceptance of their proposal, and another of the corporations that had submitted a proposal, the Kroger Company, both filed actions for injunctive relief in the Franklin County Court of Common Pleas, which on October 6 and 13, 1972, issued orders restraining Ohio University and the Ohio Department of Public Works from proceeding with the lease until further determinations had been made by the board of trustees of such university as to what in fact would be for the best interests of Ohio University, relative to any of the specific proposals.

As a result of such litigation, new lease proposals were made and submitted to the university by Big Bear Corporation and Kroger Company, and on December 8, 1972, defendant R. Wilson Neff, then the director of the Ohio Department of Public Works, wrote to the chairman and members of the board of trustees of Ohio University, recommending a lease with the Kroger Company. Thereafter, on December 14, 1972, the board of trustees of Ohio University resolved to accept the recommendation of the director of public works. Plans and negotiations evolved into the lease agreement and, on May 9, 1973, the board passed a resolution that the proposed lease with the Kroger Company was in the "best interests of the president

and trustees of Ohio University," approved the lease, and directed the director to finalize such. Thereafter, on May 18, 1973, the director, on behalf of the state of Ohio, entered into a lease agreement for two described parcels of the surplus university lands.

Subsequently, this action was filed in the Court of Common Pleas seeking an injunction against the performance of such contract, and for other equitable relief. The matter was submitted to the court after full hearings and the filing of exhibits, depositions and extensive briefs on the legal questions presented. The Honorable Frederick T. Williams rendered a decision in favor of the defendants, and thereafter filed separate "Findings of Fact and Conclusions of Law" and entered a final order and judgment, filed on January 10, 1974, dismissing the complaint and entering a final judgment for the defendants. Plaintiffs now appeal to this court, setting forth the following assignments of error:

"1. The Court erred in ruling that Section 123.77 of the Ohio Revised Code is a constitutionally valid statute and is not an unlawful delegation of legislative power.

"2. The Court erred in ruling that the leasing of Ohio University Airport lands to the Kroger Company for development of a commercial shopping center was not prohibited by Article I, Section 19 of the Ohio Constitution of 1851.

"3. The Court erred in ruling that the proposed transaction between the Department of Public Works, the President and Board of Trustees of Ohio University, and the Kroger Company, as governed by the terms and conditions contained in the lease agreement between those parties, does not cause the State to become a joint owner in a company or association formed for the purpose of developing a commercial shopping center, in violation of the provisions of Article VIII, Section 4 of the Ohio Constitution of 1851.

"4. The Court erred in ruling that the Agreement entered into between the Department of Public Works, the President and Board of Trustees of Ohio University, and the Kroger Company, does not result in the State lending

its credit to a private corporation in violation of Article VIII, Section 4, and Article VIII, Section 5 of the Ohio Constitution of 1851.

"5. The Court erred in ruling that the leasing of surplus state lands for the purpose of increasing revenues for university and educational interests is for a public purpose.

"6. The Court erred in ruling that the President and Board of Trustees of Ohio University are not restricted by the corporate charter of Ohio University from engaging in development of surplus state land as a commercial shopping center.

"7. The Court erred in ruling that the lease agreement entered into by the Department of Public Works, the President and Board of Trustees of Ohio University, and the Kroger Company is in compliance with the statutory provisions of Section 123.77 of the Ohio Revised Code."

This matter has been exceptionally well briefed by counsel for the plaintiffs, the appellants herein, and counsel for the defendants. They were presented the issues very informatively and persuasively, their briefs containing very exhaustive arguments and supportive data relative to all positions of the parties. All assignments of error shall, in compliance with App. R. 12(A), be passed upon by this reviewing court; however, we shall do so not in the order presented, but in the sequence that we feel will best fit the decisional pattern in response to all questions presented.

We shall first consider the plaintiffs' third assignment of error wherein it is alleged that the trial court erred in holding that the lease does not cause the state to become a joint owner in a company or association in this state, contrary to Article VIII, Section 4 of the Ohio Constitution of 1851.

Article VIII, Section 4, in its entirety, reads as follows:

"The credit of the state shall not, in any manner, be given or loaned to, or in aid of, any individual association or corporation whatever; nor shall the state ever hereafter become a joint owner, or stockholder, in any company or

association in this state, or elsewhere, formed for any purpose whatever."

The plaintiffs argue that *Alter* v. *Cincinnati* (1897), 56 Ohio St. 47, although dealing with Article VIII, Section 6, which extends the prohibition of Article VIII, Section 4, to cities, counties, towns, and townships, by analogy clearly prohibits such a lease as has been entered into in this instance by the state of Ohio through one of its agencies.

Plaintiffs argue that this lease, and the operations thereunder, as entered into pursuant to R. C. 123.77, may indeed be likened to the activities contemplated in the Cincinnati ordinance in *Alter* which was held to be violative of Article VIII, Section 6 of the Ohio Constitution.

The court, in *Alter*, proscribed the joinder of public and private properties into one whole and integral part within the wording of the first and second paragraphs of the syllabus, as follows:

"1. Under section six of article eight of the constitution, a city is prohibited from raising money for, or loaning its credit to, or in aid of, any company, corporation, or association; and thereby a city is prohibited from owning part of a property which is owned in part by another, so that the parts owned by both, when taken together, constitute but one property.

"2. A city must be the sole proprietor of property in which it invests its public funds, and it cannot unite its property with the property of individuals or corporations, so that when united, both together form one property."

The holding in *Alter* was followed by the decision of the Ohio Supreme Court in *State, ex rel. Wilson*, v. *Hance* (1959), 169 Ohio St. 457.

It is true that in the instant case we are not dealing with the acts of a county, city, town or township, which are controlled by Article VIII, Section 6. Instead, we are dealing with the acts of the state through one of its agencies—Ohio University. However, the language of Article VIII, Section 4, prohibiting the state from lending its credit to a private individual association or corporation, and prohibiting the state from becoming a joint owner, is nearly iden-

tical to that in Article VIII, Section 6, and we construe the meaning given to Section 6, as such was applied to the cities referred to in the cases cited, to be equally applicable to the state under Section 4.

Also, it is true that the fact situation in the instant case differs from the fact situations in the cases cited. True, the state is not to be a joint entrepreneur with the lessee Kroger Company in the operation of the shopping center, and we recognize that the state will not be conveying the land for the purpose of encumbering such with a first mortgage and the reconveyance to the state will not be subject to a mortgage. However, the terms of the lease provide that the improvements shall, until the termination of the lease or a default thereon, be the property of the lessee, and that such improvements may be encumbered by the lessee. Further recognizing the property rights of the lessee and the latter's mortgagees in such improvements attached to the land, the lease provides that, upon any default of the lessee in the payments of any such mortgage, the lessor must give recognition to the rights of the mortgagees.

This type of an arrangement, when the land of the state is joined by the improvements of the lessee under the lease, gives rise to the question of whether such a joinder of property of the state and a corporation does in fact produce the integral whole which was frowned upon by the Supreme Court in the cases of *Alter* and *Hance.*

We feel that the question is indeed raised herein of whether the lease drawn in the instant case, pursuant to the authority of R. C. 123.77, could stand the test of constitutionality in the light of the aforestated cases decided by the Ohio Supreme Court. We therefore hold that the plaintiffs' argument under this assignment of error, as such argument relates to Article VIII, Section 4, is well taken, and that the portion of the trial court's decision in this regard is erroneous.

The plaintiffs' assignment of error number four asserts that the trial court erred in finding that the lease agreement did not result in the state's lending its credit to the lessee Kroger Company, in violation of Article VIII, Section 4 of the Ohio Constitution, and erred in finding

that the state of Ohio had not agreed to assume the debts of this private corporate lessee, in violation of Article VIII, Section 5 of the Ohio Constitution of 1851.

Based upon the law as enunciated by the Supreme Court of Ohio, referred to in the discussion of assignment of error number three, we must hold that there is serious doubt as to the constitutionality of this lease in that, as construed by the Supreme Court of Ohio, such an arrangement occasioning the joinder of properties of the state and that of the private corporation results in a lending of the credit of the state of Ohio. Therefore, the argument under this assignment of error is well taken, and the decision of the trial court in this respect is erroneous.

However, as to the other branch of this assignment of error, we are not disposed to say the court erred.

Article VIII, Section 5, which the plaintiffs argue under this assignment has also been violated, reads as follows:

"The State shall never assume the debts of any county, city, town, or township, or of any corporation whatever, unless such debt shall have been created to repel invasion, suppress insurrection, or defend the State in war."

We hold that the lease agreement considered herein does not contain any provision which would require the state to assume the debts of this corporate lessee. It is true that the right of the lessor to re-enter the premises upon the default of the lessee is subject to the rights of the lessee's mortgagees to do everything necessary, including the operation of facilities, in order to pay the rentals and the other obligations, including the mortgage. However, we hold that such a provision, or any other provision to be found in such lease, falls short of obligating the state to assume the debts of the private corporate lessee.

The first assignment of error claims that the trial court erred in holding that R. C. 123.77 is a constitutionally valid statute, and that it is not an unlawful delegation of legislative power. We have alluded, within the framework of the discussion of assignments of error numbers three and four, to the fact that R. C. 123.77, and the lease as entered into herein, pursuant to such section of law,

would seem to be in violation of Article VIII, Section 4 of the Ohio Constitution.

As to the claim of the unconstitutionality of R. C. 123.-77 under his assignment of error, we hold that there would be an irreconcilable conflict between such law and the constitutional provision above stated, absent another constitutional provision which would give validity to such act of the legislature.

Indeed there is another constitutional provision. Although not argued by the defendants in support of the authority of the state or one of its agencies, such as Ohio University, to enter into a lease for the development of its surplus lands, it is significant to this discussion to refer to the Ohio Constitutional Amendment Article VIII, Section 13, as adopted by the electorate of the state of Ohio on May 4, 1965, which amendment we quote, in part, as follows:

"To create jobs and employment opportunities and to improve the economic welfare of the people of the state, it is hereby determined to be in the public interests and a proper public purpose for the state or its political subdivisions * * * to acquire, construct, enlarge, improve or equip, and to sell, lease, exchange or otherwise dispose of property, structures, equipment, and facilities, within the State of Ohio for industry, commerce, distribution, and research, to make or guarantee loans and to borrow money and issue bonds or other obligations to provide moneys for the acquisition, construction, enlargement, improvement, or equipment of such property, structures, equipment, and facilities. Laws may be passed to carry into effect such purposes and to authorize for such purposes the borrowing of money by, and the issuance of bonds or other obligations of, the state, or its political subdivisions, taxing districts or public authorities * * * and to authorize the making of guarantees and loans and the lending of aid and credit, which laws, bonds, obligations, loans, guarantees, and lending of aid and credit shall not be subject to the requirements, limitations, or prohibitions of any other section of Article VIII * * * of the Constitution, provided that moneys raised by taxation shall not be obligated or pledged for

the payment of bonds or other obligations issued or guarantees made pursuant to laws enacted under or ratified, validated, confirmed, and approved by this section. * * *

"The powers herein granted shall be in addition to and not in derogation of existing powers of the state or its political subdivisions, taxing districts, or public authorities, or their agencies or instrumentalities or corporations not for profit designated by any of them as such agencies or instrumentalities. * * *"

Such constitutional amendment, by its language, finds it to be in the public interest, and a proper public purpose, for the state to lend the credit of the state, to make loans, and to lease lands for the purpose of industry and commerce. We hold that R. C. 123.77 is authorized by, and enacted pursuant to Article VIII, Section 13 of the Ohio Constitution. Such section of law is not merely a provision for the disposition of surplus university property, but is a provision for the development of such lands for "industrial, distribution, commercial, or research facilities," as set forth in the stated constitutional amendment.

It must also be noted that such amendment specifically states that laws may be enacted for the purposes set forth in the amendment, and that such "laws * * * loans, guarantees, and lending of aid and credit shall not be subject to the requirements, limitations, or prohibitions of any other section of Article VIII * * * of the Constitution * * *." Acts passed pursuant to Article VIII, Section 13, are specifically not subject to the requirements and limitations of other sections of Article VIII; therefore, we must hold that R. C. 123.77 is not violative of Article VIII, Section 4 of the Ohio Constitution.

Plaintiffs argue that R. C. 123.77 grants to the department of public works and to the state universities, such as Ohio University, the authority to enter into a lease, for commercial purposes, of university lands determined to be surplus, and that this is an improper delegation of legislative power, in that such statute does not meet the tests of completeness and definitiveness listed in *Neweiler* v. *Kauer* (1951), 62 Ohio Law Abs. 536, which sets forth the following, at page 538:

" 'One of the most important tests as to whether particular laws amount to an invalid delegation of legislative power is found in the completeness of the statute as it appears when it leaves the hands of the legislature. * * * The law must be perfect, final and decisive in all of its parts, and the discretion which is given must relate only to execution. * * *' "

In reviewing R. C. 123.77, in its entirety, we believe it to be a lawful enactment and find no unconstitutional delegation of legislative authority. Conversely, we find that this section grants only such discretionary authority to an administrator, the director of the Ohio Department of Public Works, that enables him to carry out the specific intent and purposes of the act, and it must be emphasized that the legislature in this instance has set forth in rather specific detail the standards or requirements that are to be followed by the director in any such proceedings.

We believe that such section of law does in fact set forth in rather complete detail the standards and guidelines and principles to be followed by the administrative officers in carrying out the intent and purposes of such act, and that such does not confer upon the administrator an unlawful discretion as to the execution of such act, but provides for the appropriate standards to be followed by such administrator in the carrying out of the intent and purposes of such act. Assignment of error number one, in light of the foregoing, must be dismissed.

The second assignment of error of the plaintiffs is to the effect that the court erred in ruling that the leasing of the Ohio University airport lands to the Kroger Company for the development of the commercial shopping center was not prohibited by Article I, Section 19 of the Ohio Constitution. Article I, Section 19, mandates that private property shall ever be held inviolate but subservient to the public welfare, and provides that where private property shall be taken for public use, a compensation therefore shall first be made in money.

We are in agreement with the trial court herein that the portion of Article I. Section 19, which prohibits the taking of private property without compensation, is not

applicable to the instant transaction, nor to R. C. 123.77, in that there has been no taking of private property from a private citizen for a public purpose, and the section involved does not contemplate such. In the present instance, the state of Ohio, through Ohio University, has owned the property, which has been used for a public purpose as an airport in conjunction with the university, for many years. However, the main thrust of the taxpayers' argument under this assignment is that the constitutional mandate that private property remain inviolate, and subservient to the public welfare has been thwarted by the state's alleged intrusion into the private business domain of operating motels, food stores, drug stores and shopping centers.

The state, in the instant case, is simply a lessor of its lands to a lessee entrepreneur who desires to use such for a private enterprise and, as in many other instances throughout the state of Ohio, leases have been entered into by and on behalf of the state of Ohio, through the directors of various departments, for many years. A number of those leases by and on behalf of the state of Ohio, which have been submitted to the trial court as exhibits herein, are leases of submerged land for corporate purposes, water leases, leases of surplus state lands for parking lot purposes, storage purposes, leases of state lands for agricultural purposes, and leases of state lands for department store and commercial store operations.

We hold there to be no violation of Article I, Section 19 of the Constitution of Ohio, either by way of the questioned R. C. 123.77, or in the execution of the lease agreement herein, pursuant to such statute. Plaintiffs' assignment of error number two is hereby dismissed.

In the plaintiffs' fifth assignment of error, they claim that the trial court erred in ruling that the leasing of surplus state lands for the purpose of increasing revenues for university and educational interests is for a public purpose. This assignment of error has not been separately argued within the plaintiffs brief, but has been interwoven into the arguments of other assignments. For the purposes of

this assignment, it is only necessary to state that the language of Article VIII, Section 13 of the Ohio Constitution has answered this question for us by specifically stating that the activities alluded to thereunder, including the entering into of leases is ''determined to be in the public interest and a proper public purpose for the state or its political subdivisions * * *.'' Plaintiffs' fifth assignment of error is therefore dismissed.

In their sixth assignment of error, the plaintiffs claim that the trial court erred in ruling that the president and the board of trustees of Ohio University are not restricted by the corporate charter of Ohio University from ''engaging in development'' of surplus state lands as a commercial shopping center. Initially, it must be noted that such was not the ruling of the trial court. Precisely, the trial court ruled that the president and board of trusees are not restricted by the corporate charter from ''leasing surplus lands to private developers.''

In support of this assignment of error, the plaintiffs argue that the action of the president and the board of trustees of Ohio University, in approving, reviewing and recommending that the director of the Ohio Department of Public Works enter into an agreement for the development of the Ohio University airport lands with the Kroger Company, is engaging in a commercial enterprise for profit, which is not incidental to the main object, functions and purposes of the university and is, therefore, invalid.

In review of the original charter of Ohio University, and of the current statutes governing such university and its operation, we find no specific prohibition which would prohibit the board of trustees of such university from exercising a grant of power as provided by the Ohio General Assembly within R. C. 123.77. We hold it to be completely within the scope of the powers of the board of trustees of the university to determine that a portion of university lands is surplus to the current university needs and should be developed in order to provide funds which shall, within the language and intent of the original charter, ''be appropriated to the endowments of

the said university, in such manner as shall most effectually promote the end of the institution." Assignment of error number six is hereby dismissed.

As to assignment of error number seven, the plaintiffs argue that neither the lease agreement for the subject property, nor the development plan in respect thereto complies with the requirements set forth in R. C. 123.77.

We hold that the Kroger Company did in fact comply with the requirements of R. C. 123.77, in supplying the director of public works a comprehensive plan for the development of the land which is contemplated in the first phase of such development. It is our position, and we so hold that the statute does not require the submission of a plan for the development of land that is contemplated many years in the future; such future development, understandably, would be somewhat uncertain and speculative. The statute requires the furnishing of developmental plans of the improvement which are immediately contemplated for development upon the property of the university.

The detail of the plans and the acceptability of any plans submitted to the director of public works are within the discretion of the director. In the absence of specific directions in the statute, covering in specificity and minute detail the manner and method of submitting a plan to the director, the latter has implied power and authority necessary for the performance of the duty imposed upon him by the statute. *State, ex rel. Hunt,* v. *Hildebrant* (1915), 93 Ohio St. 1.

Other arguments were presented by the plaintiffs under this assignment and they question a number of the other provisions of this lease; however, we feel that none have substantial merit, and we therefore dismiss the seventh assignment of error.

Based upon all of the foregoing, the judgment of the Court of Common Pleas Court of Franklin County is hereby affirmed.

*Judgment affirmed.*

TROOP, P. J., and WHITESIDE, J., concur.