CITIZENS WORD, Appellee,

v.

CANFIELD TOWNSHIP et al., Appellants; Bayus, in her Capacity
as a Canfield Township Trustee, Cross–Claimant–Appellee.

[Cite as *Citizens Word v. Canfield Twp.*, 152 Ohio App.3d 252, 2003-Ohio-1604.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 01 CA 197.

Decided March 28, 2003.

Ronald Knickerbocker, for plaintiff-appellee.

Mark Finamore, for defendants-appellants.

Frank Bodor, for defendant/cross-claimant-appellee.

Mark Rafidi, for amicus curiae.

---

VUKOVICH, Judge.

{¶ 1} Defendants-appellants Canfield Township and its duly elected trustees (collectively known as "township") appeal from the judgment of the common pleas court granting a permanent injunction for plaintiff-appellee Citizens Word. The dispositive issue before this court is whether the township's May 31, 2000 resolution violated Section 6, Article VIII of the Ohio Constitution. Specifically, we are asked to decide whether a township can expend its own monies on the installation of water lines on township property that will be used primarily by a private residential developer. Answering this question in the affirmative, we hereby reverse the judgment of the trial court.

## STATEMENT OF FACTS

{¶ 2} In 1998, Chris Abraham, representing T.C. Quality Homes, Inc., a private developer of residential subdivisions, contacted the township about developing a 99.8–acre parcel of land it owned on Gibson Road, Canfield Township, Ohio. Abraham contacted the township inquiring whether it would have the ability to provide utilities for a development consisting of 140 homes. If it did not, the developer would explore annexation procedures to the village of Canfield. At that time, Gibson Road was a country dead-end road under the jurisdiction of Mahoning County, consisting of approximately 27 houses. No water lines or sewer lines existed down this road.

{¶ 3} The township, eager to keep township land from being annexed into the village of Canfield, began to explore its options in attempting to provide utilities to Gibson Road. The township made an agreement with Mahoning County for the township to assume control over Gibson Road. The Mahoning County Planning Commission directed that Gibson Road be improved to enable it to handle the anticipated increase in traffic. The improvements were also needed to ensure that fire and emergency personnel could adequately access the properties along this road, if the need arose for such services.

{¶ 4} The township agreed to pay the cost of installing the water lines as long as it was guaranteed total reimbursement. The developer agreed that the property being developed, the residential subdivision, would not be annexed to

the village of Canfield. The township passed the March 31, 2000 resolution ordering improvements to Gibson Road. The resolution stated that Gibson Road would be widened, and maintenance would be provided during construction of the water lines. It is undisputed that the installation of the water lines is primarily for the use of the future residents of the development.

{¶ 5} Township Trustee Judy Bayus agreed to approve a resolution allowing for the construction of water lines at the township's expense as long as three conditions were met. First, the funds for the extension of the water lines would be totally reimbursed to the township. Second, reimbursement would occur within six years. Third, the township would receive a sufficient guarantee of payment. However, a few months after the March 31, 2000 resolution, the remaining trustees passed a resolution that the township would be reimbursed within 20 years.

{¶ 6} As a result of these resolutions, Citizens Word (Citizens Wanting Only Responsible Development) filed a complaint against the township and its duly elected representatives requesting a permanent injunction. Bayus filed an answer and a counterclaim against the remaining trustees based on the later resolution. The case proceeded to a hearing. At the hearing, Bayus and the remaining trustees resolved their problem concerning the resolution. The township would be reimbursed within six years, and the reimbursement would come from tap-in fees. As such, the only issue that remained was whether the May 31, 2000 resolution violated Section 6, Article VIII of the Ohio Constitution. The trial court held that the actions of the township violated that provision of the Ohio Constitution because it was lending its credit to a private entity. The township timely appeals from that decision.

{¶ 7} Since the trial court's decision, the developer, using its own money, paid for the installation of the water lines. As a result of that action, Citizens Word claims that this appeal is moot. Prior to addressing the township's assignments of error, we will address whether installation of the water lines at the developer's expense renders this appeal moot.

## MOOTNESS

{¶ 8} It is a basic principle of law that courts ordinarily will not entertain jurisdiction over moot issues. *Carver v. Deerfield Twp.* (2000), 139 Ohio App.3d 64, 77, 742 N.E.2d 1182. However, courts are vested with the jurisdiction to address moot issues when such issues are capable of repetition yet evade review. *State ex rel. Plain Dealer Publishing Co. v. Barnes* (1988), 38 Ohio St.3d 165, 527 N.E.2d 807, paragraph one of the syllabus. Courts are also vested with jurisdiction to address moot issues when those issues concern an important public right or a matter of great public or general interest. *In re Appeal of Huffer*

(1989), 47 Ohio St.3d 12, 14, 546 N.E.2d 1308. We find that both reasons are applicable in the matter before us.

{¶ 9} A developer who wants to build a residential community may go forward with installing the water lines at its own cost, rather than waiting for the completion of the appeals process. Accordingly, the issue is one that might evade review. Furthermore, and maybe even more important, the issue before us is a matter of great public interest. Providing water to residents of a political subdivision is a traditional activity for which public funds may be expended. Any court ruling that finds that an expenditure of this type is constitutional or unconstitutional involves a matter of great public interest. Consequently, we will now address the township's assignments of error.

### ASSIGNMENT OF ERROR NO. ONE

{¶ 10} "The trial court erred in finding that construction of the water improvement at public expense violated Article VIII, Section 6 of the Ohio Constitution."

{¶ 11} The township states that it did not raise money, lend its credit, or enter into a joint venture with the developer for the construction of water lines down Gibson Road, and therefore it did not violate Section 6, Article VIII of the Ohio Constitution. The township furthers this argument by claiming that the trial court's reliance on *C.I.V.I.C. Group v. Warren* (2000), 88 Ohio St.3d 37, 723 N.E.2d 106, is misplaced. Citizens Word argues that the township's action in the case at hand is similar to the city's action in *C.I.V.I.C.* As such, according to Citizens Word, the trial court correctly relied on *C.I.V.I.C.* in concluding that the township violated Section 6, Article VIII of the Ohio Constitution.

{¶ 12} R.C. 505.705 and 6103.031 grant a township the authority to expend monies on the construction of water lines on its property. However, in constructing water lines, the township is not permitted to violate Section 6, Article VIII of the Ohio Constitution, which provides:

{¶ 13} "No laws shall be passed authorizing any * * * township, by vote of its citizens, or otherwise, to become a stockholder in any joint stock company, corporation, or association whatever; or to raise money for, or to loan its credit to, or in aid of, any such company, corporation, or association * * *." Section 6, Article VIII of the Ohio Constitution.

{¶ 14} The purpose behind Section 6, Article VIII of the Ohio Constitution is to prohibit private interests from tapping into public funds at the taxpayers' expense. *C.I.V.I.C.*, 88 Ohio St.3d at 40, 723 N.E.2d 106. In the early days of statehood, Ohio's fertile soil and abundance of water provided many opportunities, yet Ohioans lacked the efficient means to get their products to

market. Id. at 39–40, 723 N.E.2d 106. Thus, Ohio and its subdivisions undertook the financing of railroad and canal companies by lending credit to and purchasing stock in aspiring new ventures. Id.; *Grendell v. Ohio EPA* (2001), 146 Ohio App.3d 1, 7–8, 764 N.E.2d 1067. When many of these private interests failed, public debt soared, and heavy taxation followed. *Grendell,* supra. As a result, Section 6, Article VIII was made a part of the Ohio Constitution. Id. In general, Article VIII has been said to be an expression of concern with placing public tax dollars at risk to aid private enterprise. *State ex rel. Petroleum Underground Storage Tank Release Comp. Bd. v. Withrow* (1991), 62 Ohio St.3d 111, 114, 579 N.E.2d 705.

{¶ 15} In 2000, the Ohio Supreme Court addressed whether a city's action of providing financial support to a private residential development violated Section 6, Article VIII of the Ohio Constitution. *C.I.V.I.C.,* 88 Ohio St.3d 37, 723 N.E.2d 106. It held that when "a city contributes to the payment for and financing of a residential subdivision development project, the city is taking action 'to raise money for,' and 'loan its credit to, or in aid of,' private corporation in violation of Section 6, Article VIII of the Ohio Constitution." Id. at syllabus. Therefore, in *C.I.V.I.C.,* the city was directly financing the improvements to the property of the residential development. *C.I.V.I.C. Group v. Warren* (Oct. 9, 1998), 11th Dist. No. 98–T–0001. The question not answered in *C.I.V.I.C.,* however, is whether a governmental entity can constitutionally finance an improvement on its own property where that improvement would be of benefit to a private developer.

{¶ 16} We hold that a governmental entity can improve its own property regardless of whether it will benefit a private developer. Citizens Word's contention and the trial court's reasoning that *C.I.V.I.C.* is identical to the situation at hand is incorrect. We consider the ownership and control of the lands to be improved to be the critical factor which distinguishes the case sub judice from *C.I.V.I.C.* In *C.I.V.I.C.* the city was lending its credit to a developer by constructing improvements on the developer's land and only receiving reimbursement for 80 percent of its costs. *C.I.V.I.C.,* 88 Ohio St.3d at 40, 723 N.E.2d 106. Here, the improvements to be financed by the government were on the township's land and not on the land of a private developer. Thus, the township was acting under its authority to place water lines on property under its control. See R.C. 505.705; R.C. 6103.031.

{¶ 17} Assuming arguendo that a township wanted to place water lines down a road under its control and that no residential development was being built adjacent to this road, little could be done to prevent the township from placing water lines down this road. Accordingly, if a residential development is built at the same time the water lines are constructed and the tap-in fees will reimburse the township for its construction of the water lines, the result does not change.

The township still has the authority to construct water lines on its own property that will be under its control. Therefore, the township's action of placing a water line down Gibson Road did not result in its raising money or lending its credit to the developer.

{¶ 18} Additionally, and although not as critically important as the ownership of the property, the township was to be reimbursed within six years for the amount it expended on the construction of the water lines on its own property. The only fees that the township would not recoup would be paying for the advertising costs, permit fee costs, legal expenses, and portions of the engineering costs. The guaranteed reimbursement indicates that the township neither lent its credit nor raised money for private investment. See *Springfield ex rel. Burton v. Springfield* (June 23, 2000), 2d Dist. No. 2000–CA–0014, 2000 WL 799727 (questioning the applicability of the *C.I.V.I.C.* case when the developer would reimburse the city 100 percent for improvements in residential areas and 90 percent for improvements in nonresidential areas where the reimbursement was guaranteed with liens upon the land).

{¶ 19} Therefore, the trial court's reliance on *C.I.V.I.C.* is misplaced, as the facts in the case sub judice are distinguishable from the facts in *C.I.V.I.C.* Accordingly, we hold that the township neither lent its credit nor raised money for the developer. The trial court erred in granting a permanent injunction based upon that reasoning.

{¶ 20} Furthermore, we disagree with the trial court's finding that the township entered into a joint venture with the developer. The language "joint venture" is not used in Section 6, Article VIII of the Ohio Constitution. *Grendell*, 146 Ohio App.3d at 10, 764 N.E.2d 1067, fn. 4 (stating that only a few courts have considered a "joint venture" in regards to Section 6, citing *State ex rel. Tomino v. Brown* [1989], 47 Ohio St.3d 119, 121–122, 549 N.E.2d 505; *Lazarus v. Hamilton Cty. Bd. of Commrs.* [C.P.1966], 6 Ohio Misc. 254, 260, 35 O.O.2d 444, 217 N.E.2d 883; *State ex rel. Eichenberger v. Neff* [1974], 42 Ohio App.2d 69, 71 O.O.2d 443, 330 N.E.2d 454, using the word "venture" only in its unofficial syllabus and not in the text of the opinion). However, it has been held that Section 6 prohibits "joint business ventures." *Tomino*, 47 Ohio St.3d at 121–122, 549 N.E.2d 505.

{¶ 21} A "joint business venture" is defined as:

{¶ 22} " '[A]n association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, without creating a partnership, and agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers * * *.' " *Al Johnson Constr. Co. v. Kosydar* (1975),

42 Ohio St.2d 29, 71 O.O.2d 16, 325 N.E.2d 549, paragraph one of the syllabus, quoting *Ford v. McCue* (1955), 163 Ohio St. 498, 56 O.O. 410, 127 N.E.2d 209, paragraph one of the syllabus.

{¶ 23}   A joint business venture requires that each party has the authority to equally direct and control the other with respect to all aspects of the alleged enterprise.  *Clifton v. Van Dresser Corp.* (1991), 73 Ohio App.3d 202, 211, 596 N.E.2d 1075; *Ford*, supra.   In the case at hand, the developer was to have no control over the water lines; it would be owned solely by the township for the township's benefit.   As such, equal control did not exist;   therefore, a joint venture did not occur, and Section 6 was not violated.   This assignment of error has merit.

### ASSIGNMENT OF ERROR NOS. TWO AND THREE

{¶ 24}   "The trial court erred in enjoining enforcement of the resolution of March 31, 2000, since the parties stipulated that appellant could lawfully proceed with construction of the road improvements which were authorized under that resolution."

{¶ 25}   "The trial court erred in granting counsel for appellee Citizens Word leave to file a motion for attorney fees pursuant to R.C. 309.13."

{¶ 26}   Our disposition of the first assignment of error renders both of these assignments of error moot.

{¶ 27}   For the foregoing reasons, the decision of the trial court is hereby reversed.   It was not a violation of the Ohio Constitution for the Township to install water lines on its own property, regardless of whether the primary benefit was for a private developer.

Judgment reversed.

WAITE, P.J., and READER, J., concur.

W. DON READER, J., retired, of the Fifth Appellate District, sitting by assignment.